**In re the Marriage of Frederick O. BAKER, Appellant,**

v.

**Lela V. BAKER, Respondent.**

**Nos. 56928, 56929.**

Missouri Court of Appeals,
Eastern District,
Southern Division.

Oct. 30, 1990.

Herbert A. Kasten, Jr., Ste. Genevieve, for appellant.

Raymond A. Bruntrager, Sr., Mary Bruntrager Schroeder, St. Louis, for respondent.

CARL R. GAERTNER, Judge.

Petitioner, Frederick Baker and Respondent, Lela Baker both appeal from an amended decree dissolving their eleven year marriage. Both challenge the trial court's distribution of marital property. Specifically, Frederick Baker alleges the trial court erred in overvaluing his two pension plans in 1) finding that fifty-six percent (56%) of his Salaried Employee's Retirement Plan (SERP) was marital property, 2) determining the present value of his second pension plan without taking into account a future reduction in monthly benefits, and 3) failing to consider tax and interest/inflation consequences in a fair and equitable manner.

Lela Baker claims the trial court abused its discretion in failing to make an "even" distribution of marital property and in denying her request for maintenance finding her capable of supporting herself. Further, she asserts the trial court erred in denying her motion to dismiss for improper venue because she filed a petition for dissolution in St. Louis County and had obtained service on her husband prior to herself being served in this action.

Petitioner and Respondent were married on March 11, 1978. The trial court found that the parties had maintained separate residences since July 1984. There were no children born of the marriage.

Frederick Baker was sixty years old at the time of the trial. He worked for Chrysler Corporation for thirty-two years beginning in 1952 and retiring in April, 1986. Lela Baker was fifty-four years old at the time of the hearing. The court found she had an extensive history of employment. Most recently, she had worked for the United States Postal Service as a mail carrier. Although presently not employed, the court found she has over fifteen years pension credit with the federal government valued at about $7,000.

Approximately one year prior to the hearing she took leave without pay and filed for both workers' compensation and disability retirement. Her testimony was that she took this action because of a heart condition caused by job related stress. She presented no expert medical evidence. The record reflects she was earning $26,000 dollars a year as a mail carrier and presently receives rental income from real estate she owns in Kentucky in the amount of $802.50 per month.

The total value of the marital property of the parties was found by the trial court to be $265,519.56. Of this total the court awarded to Lela Baker marital property it valued at $121,766.00, approximately forty-six (46%) percent of the total. The remaining fifty-four (54%) percent was distributed to Frederick Baker. The major asset the wife received was the marital residence valued at $100,000. The major assets Frederick Baker was awarded were his pension plans valued by the trial court at $57,221.88. The court denied wife's request for maintenance and ordered husband to pay $3,000.00 toward her attorney's fees.

▮ The trial court is vested with wide discretion in dividing marital property. Appellate courts will only interfere with the division "if the division is so heavily and unduly weighted in favor of one party so as to amount to an abuse of discretion." *Dardick v. Dardick*, 670 S.W.2d 865, 869 (Mo. banc 1984); citing *Colabianchi v. Colabianchi*, 646 S.W.2d 61, 64 (Mo.banc 1985); *Metts v. Metts*, 625 S.W.2d 896, 899 (Mo. App.1981), *See* also *Taylor v. Taylor*, 736 S.W.2d 388, 391 (Mo.banc 1987).

▮ Husband complains the trial court erred in valuing his pension plans. Husband had two pension plans both of which are properly considered marital property. First, the evidence at trial shows that husband contributed a total of $5,136.00 to his Salaried Employees Retirement Plan (SERP) at retirement. Of this total, he had contributed $2,859.58 up to March 11, 1978. This constitutes fifty-six percent (56%) of the total amount of this pension plan that was contributed prior to marriage. Thus, the trial court's determination that fifty-six percent (56%) of the plan's present value was marital property was clearly errone-

ous. The evidence and uncontradicted record shows that fifty-six percent (56%) should be characterized as husband's separate non-marital property and forty-four percent (44%) considered marital property subject to division.

Second, husband contends that the trial court erred in failing to recognize that the monthly benefits he was currently receiving from his second pension plan would be reduced from $1,153.07 to $720.40 upon reaching age sixty-two or in about two years. In its Decree the court used the $1,153.07 figure as a constant throughout husband's life expectancy in its computation of the present value. Therefore, the trial court's determination of present value of this plan must be recalculated taking this reduction of $432.67 into account as this will significantly change the value attributed to this plan.

Husband's final complaint with respect to the trial court's valuation of his pension plans is that the court used a four percent interest/inflation rate instead of a more equitable rate of nine percent and that it failed to make appropriate adjustments for tax consequences. Neither party presented any evidence as to the present value of these pension plans and, in the original decree, the court made no determination of present value. Wife filed a motion for new trial and prayed for leave to reopen the case to present evidence regarding present value. The court then issued an amended decree in which it determined present value on the basis of life expectancy and annuity tables found in Vol. 42 V.A.M.S. Such tables are a proper subject for judicial notice even though not introduced in evidence. *Turner v. Cowart,* 450 S.W.2d 441, 445 (Mo.1969). Calculation of the present value of a pension by multiplying the present value of dollars received each month by twelve and by the number of years of life expectancy was approved in *In Re Marriage of Cox,* 724 S.W.2d 279, 281 (Mo.App.1987).

It is undisputed that pension benefits are considered marital property and properly subject to division in a dissolution proceeding. *Kuchta v. Kuchta,* 636 S.W.2d 663, 664 (Mo.banc 1982). In fact, a spouse's retirement benefits may be the most valuable asset belonging to a couple. *Id.; See* Krauskopf, Marital Property at Dissolution, 43 Mo.L.Rev. 157, 171 (1978). In *Smith v. Smith,* 682 S.W.2d 834, (Mo. App.1984), this court held that the parties carry an equal burden to present evidence of value in a dissolution proceeding. Further, the court held that a "complainant should not be rewarded for presenting insufficient evidence of property values." *Id.* at 836. Accordingly, were it not for the mathematical errors noted above which require recalculation and possibly revision of the division of marital property, we would be disinclined to grant relief on husband's related complaint that the selection of a four percent interest rate was arbitrary and the failure to consider tax liability was unfair. However, because the case must be remanded and in view of wife's request in her post-trial motion for leave to present additional evidence, it would be appropriate to provide the parties with an opportunity to present evidence pertaining to the calculation of present value of the pension plans if they desire to do so.

Wife's contention on her appeal, that the court abused its discretion by not making an "even" distribution of marital property is rendered moot by our conclusion that remand is required. We find no error in the denial of maintenance to wife. In its findings the court noted the absence of medical evidence to support wife's claim of disability and specifically noted she was healthy enough to engage in certain activities. We perceive these findings to be an implicit discrediting of wife's testimony that she was unable to support herself. It is not our function to second guess the trial court on matters involving the credibility of witnesses.

Finally, the trial court did not err in denying wife's motion to dismiss for improper venue. The first dissolution action between the parties was filed by husband in St. Louis County. Wife did not file a cross-petition. Husband filed a voluntary dismissal of that case and, on January 8,

1988, filed this action in Ste. Genevieve County. On January 13, 1988, wife filed a petition for dissolution in the circuit court of St. Louis County. Service of summons upon husband in wife's suit was obtained on February 26, 1988. Service of summons on wife in husband's suit was not obtained until some months later. Wife's motion to dismiss this action was overruled. She contends this was error arguing that when two suits are filed relating to the same subject between the same parties in courts of concurrent jurisdiction, the court in which service of summons is first obtained acquires exclusive jurisdiction. Such was the rule prior to 1972 when the present Rule 53.01 was adopted. This rule provides: "A civil action is commenced by filing a petition with the court." In *State ex rel., Kincannon v. Schoenlaub*, 521 S.W.2d 391 (Mo. banc 1975) our Supreme Court applied the new Rule 53.01 to a situation identical to that in this case and concluded that as between courts of concurrent jurisdiction, the court in which the petition was first filed should retain jurisdiction to the exclusion of all other courts. The court ruled that prior cases fixing jurisdiction upon the first service of process should no longer be followed. *Id.* at 395.

Relying on the later case of *State ex rel. General Dynamics Corp. v. Luten*, 566 S.W.2d 452 (Mo.banc 1978) wife strenuously argues that *Kincannon* is no longer controlling. In *General Dynamics* the opinion of a unanimous Supreme Court states at page 458 "it is settled in Missouri that where two actions involving the same subject matter between the same parties are brought in courts of concurrent jurisdiction, *the court in which service of process is first obtained* acquires exclusive jurisdiction and may dispose of the entire controversy without interference from the other." (emphasis added)

Inexplicably, the court cites *Kincannon* as authority for this proposition. Our research has disclosed other decisions subsequent to *Kincannon* which state the rule in Missouri to be dependent upon the first service of process rather than the first commencement of the action. Resolution of this dichotomy between the clear-cut di-

rective of *Kincannon* that the prior rule should no longer be followed and the later court statements that the prior rule is the law of this state requires analysis of these decisions.

In *Kincannon* the single issue for decision was which of two Missouri circuit courts should maintain a dissolution of marriage action where husband's suit filed in Boone County was commenced prior to wife's suit in Buchanan County, but service of process on husband was accomplished in wife's action prior to service upon wife in husband's action. In order to eliminate uncertainty and to achieve uniformity with federal decisions the Supreme Court ruled the commencement of the action by the filing of the petition should be the fact determinative of exclusive jurisdiction rather than the rule enunciated in earlier cases fixing that determination upon the first service of process.

The statement quoted above from *General Dynamics* was pure dictum. The case involved a question of comity between the courts of different states. No issue regarding the establishment of exclusive jurisdiction by reason of first filing a petition or first obtaining service was asserted by the parties or addressed by the court.

In *State ex rel. Nesbit v. Lasky*, 546 S.W.2d 51, 53 (Mo.App.1977), *Kincannon* was also cited as authority for the prior rule which it abrogated. There was no issue in *Nesbit*, however, of priority between two courts in Missouri with concurrent jurisdiction. Rather, the issue was one of waiver of the defense of "prior suit pending" under Rule 55.27(g)(1).

*State ex rel. Dunn v. Schoenlaub*, 668 S.W.2d 72, 74 (Mo.banc 1984) quotes the *pre-Kincannon* rule as set forth in *General Dynamics*. Once again the issue in the case did not involve the question of priority obtained through the commencement of an action versus the obtaining of service. The question in *Dunn* involved the applicability of the compulsory counter-claim rule to issues not so substantially identical as to justify abatement of one of the two law suits pending between the same parties in different Missouri courts.

The *pre-Kincannon* rule was also set forth in *In re $29,000 in U.S. Currency, State v. Goth,* 682 S.W.2d 68, 73 (Mo.App. 1984). Although citing *General Dynamics* and *Kincannon* as authority for the old rule of establishing priority by first service of process, the court concluded the rule was inapplicable to a situation where two cases involving the same subject matter had been filed in different courts, one sounding in replevin, the other seeking forfeiture, because the cases were not between the same parties.

In *State ex rel. City of Springfield v. Conley,* 760 S.W.2d 948, 950 (Mo.App.1988) the *pre-Kincannon* rule is set forth with a citation to *General Dynamics* even though there was no dispute regarding which of two actions had priority. Two law suits between the same parties were pending in different circuits. The defendant in the second case filed a counter-claim seeking the same relief it prayed for as plaintiff in the first case. The court ordered the counter-claim dismissed because simultaneously seeking the same relief in separate actions invokes the doctrine of abatement in order to relieve a party from twice defending the same cause of action and to avoid the possibility of inconsistent judgments on the same claim.

In *State ex rel. City of Springfield v. Crouch,* 687 S.W.2d 639, 642 (Mo.App.1985) the court noted that cases subsequent to *Kincannon* cited that opinion as authority for the prior rule which it abrogated. However, because both filing and service of process had been accomplished in the first action before the second suit was filed, the court found no need to determine which rule was controlling.

Similar avoidance is not available to us under the facts of this case. We are squarely presented with the issue of determining priority and exclusivity between two Missouri circuit courts of proper venue and concurrent jurisdiction over the same subject matter in dispute between the same parties. We have engaged in the analysis of the *post-Kincannon* cases in order to demonstrate that this precise issue was not the dispositive issue in any of them.

"There is no doctrine better settled than that the language of judicial decisions must be construed with reference to the facts and issues of the particular case, and that the authority of the decision as a precedent is limited to those points of law which are raised by the record, considered by the court, and necessary to a decision." *Parker v. Bruner,* 683 S.W.2d 265 (Mo.banc 1985), (quoting from *State ex rel. Baker v. Goodman,* 364 Mo. 1202, 1212, 274 S.W.2d 293, 297 (banc 1954)

The recital of the *pre-Kincannon* rule in the *post-Kincannon* cases not being necessary to the decision in any of these cases, it must be considered as *obiter dictum,* having no precedential value. As noted in *Gerhard v. Terminal Railroad Assoc. of St. Louis,* 299 S.W.2d 866, 871 (Mo.banc 1957), once an issue has been decided by the Supreme Court, a statement contrary to the decision in a subsequent case which is not necessary to the decision therein is non-authoritative dictum and the earlier decision remains controlling. Therefore, *Kincannon* is the last decision of the Missouri Supreme Court on the precise issue presented by this case and we are required by Art. V., § 2 of the Missouri Constitution to follow it. Accordingly, commencement of husband's action by filing a petition in the circuit court of Ste. Genevieve County prior to wife's filing of her petition in St. Louis County was sufficient to vest exclusive jurisdiction in the former court regardless of the date upon which service of process was obtained in either case.

The judgment of the circuit court is reversed solely insofar as it pertains to the evaluation and distribution of marital property and the cause is remanded for further proceedings consistent with this opinion.

SMITH, P.J., and GRIMM, J., concur.