Judith Ann COHN, Petitioner/Appellant,

v.

Kenneth H. COHN, Respondent.

No. 60946.

Missouri Court of Appeals, Eastern District, Division One.

Nov. 24, 1992.

William R. Gartenberg, Lee G. Kline, Janis B. Powell, St. Louis, for petitioner/appellant.

Mary Ann Weems, Clayton, for respondent.

AHRENS, Judge.

Wife appeals from a decree dissolving the parties' marriage, alleging error in the trial court's valuation of husband's veterinary practice, wife's automobile, and the marital residence. Wife further challenges the court's award of partial attorney's fees and non-modifiable maintenance for thirty-six months. We affirm.

Husband and wife were married December 26, 1971. Two children were born of the marriage: David and Lisa, ages 16 and 14, respectively, at the time of trial. The children continued to live with wife in the marital residence after the parties separated on October 27, 1989. Wife was awarded primary physical custody of the children and $1,300.00 in monthly child support. Neither party challenges the court's support and custody orders.

Both husband and wife are well-educated professionals. Wife earned a Master's Degree in special education in 1974, and husband earned a Doctorate in veterinary medicine in 1975. Wife worked as a teaching assistant at the University of Missouri until 1975, when the parties moved to St. Louis and husband began his veterinary practice. Wife testified she worked part time without pay as husband's secretary for several years, and that she continued to do so, infrequently, throughout the parties' marriage.

In 1976, wife held a full-time position with the Special School District for a brief period before becoming pregnant with the parties' daughter. Wife returned to work in 1981 and worked for the Special School District full time for one year, a nursery school full time for one year, and a pre-school part time for three years. In 1986, wife began work as a special education teacher for Metropolitan School in St. Louis. Wife's contract with Metropolitan terminated the month before trial, and there were no full-time positions available at the school for the next semester. Wife testified she had contacted numerous schools seeking full-time work in her field, but had received no offers by the time of trial. Wife's employer at Metropolitan testified wife was an excellent employee and worker with "wonderful qualifications."

At the time of trial, husband owned and operated a veterinary clinic in Affton; his annual income from the practice exceeded $100,000 for the five years preceding trial. Husband testified it cost $70,000 to start the clinic, including real estate improvements. Husband and a partner operated two veterinary clinics before husband began the Affton practice; however, the clinics closed in 1987 and 1988 after informal efforts to sell the practices proved unsuccessful.

At trial, wife alleged husband verbally abused her and the children and on one occasion physically abused her and the parties' son, David. David corroborated much of wife's testimony and testified that he and husband did not have a good relationship. Husband denied the verbal abuse but admitted pushing wife and David during one incident.

In its decree, the trial court awarded wife the marital residence with equity of $145,000; one-half of husband's $125,000 retirement account; over $60,000 in liquid assets; an automobile valued at $6,425; and various items of personal property held in the marital residence, valued at $21,240. Husband was awarded one-half his retirement account; his veterinary practice valued at $70,000; the $80,000 piece of real estate on which his veterinary practice is situated; $2,000 in personal property held at the veterinary clinic and $4,965 in personal property from the marital residence; the $6,670 cash value in his retirement account; an automobile valued at $9,525; and approximately $19,000 in liquid assets.

Each party was also awarded substantial, unvalued separate property.

In addition to the distribution of the parties' marital and separate property, the court awarded wife non-modifiable maintenance of $500 per month for thirty-six months and ordered husband to pay $10,-000 toward wife's attorney's fees, which totalled over $37,000. Wife was ordered to pay a $39,000 mortgage on the marital home, and each party was ordered to pay the debts listed in his or her name alone and any unlisted debts incurred since the date of separation.

■ We will affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); Rule 73.01. Further, we view the evidence as favorable to the decree and disregard all contradictory evidence. *Wilson v. Wilson*, 822 S.W.2d 917, 920 (Mo.App.1991).

In point one, wife contends the trial court erred in its valuations of husband's veterinary practice, the marital residence, and wife's automobile. We first consider the court's judgment concerning the value of husband's practice.

■ In its finding of fact and conclusions of law, the trial court valued husband's veterinary practice at $70,000, based upon the testimony of husband and husband's expert. Although the court found the practice "highly personal in nature and immarketable [sic]," it attributed $60,000 of the practice's value to "goodwill."[1] Wife contends the testimony of husband and his expert was "insufficient as a matter of law to support the trial court's conclusion that there was goodwill of only $60,000.00."

■ "Goodwill" within a professional setting is "the value of the practice which exceeds its tangible assets and which is the result of the tendency of clients/patients to return to and recommend the practice irrespective of the reputation of the individual practitioner." *Hanson v. Hanson*, 738 S.W.2d 429, 434 (Mo. banc 1987). The only acceptable evidence of goodwill is evidence that other professionals are willing to pay for it when acquiring a practice. *Id.* at 435. Therefore, "the existence of goodwill is shown only when there is evidence of a recent actual sale of a similarly situated professional practice, an offer to purchase such a practice, or expert testimony and testimony of members of the subject profession as to the existence of goodwill in a similar practice in the relevant geographic and professional market." *Id.* Fair market valuation is strongly preferred both as evidence of the existence of goodwill and as evidence of its true value. *Id.* at 436.

Here, the trial court heard no evidence of the fair market value of any goodwill in husband's veterinary practice and heard no evidence of recent actual sales or offers for sale of other veterinary practices in the relevant market area. Wife's expert testified he had done no research regarding veterinary clinics sold in the Metropolitan St. Louis area in the last thirty years, and that his knowledge of the marketability of veterinary practices was based upon national studies. Although a practicing veterinarian testifying on wife's behalf stated he "believed" there was a market for veterinary practices in the St. Louis area, he was aware of only one clinic that had been sold and two that had been offered for sale in the last five to ten years; he knew no details regarding the single sale or the two offers.

Similarly, husband's expert testified he knew of no purchases or sales of veterinary clinics in the St. Louis area in the ten years before trial and was aware of no market for veterinary practices in St. Louis. Although husband's former business partner testified husband's clinic had "some marketability," he was aware of no purchases or sales of veterinary clinics in the St. Louis area for the five years preceding trial and was aware of several clinics that had been for sale for a number of years. Husband's testimony was substan-

---

1. The record indicates the trial court adopted the findings of fact and conclusions of law in husband's proposed decree.

tially similar to that of his former partner in this respect.

There was no testimony concerning the existence of goodwill in a similar veterinary practice in the St. Louis area or testimony that other professionals are willing to pay for goodwill when acquiring a practice similar to husband's. Instead, it appears that both parties' experts merely assumed the existence of goodwill and found its value through the use of capitalization formulae. Such formulae have been rejected as competent evidence of the existence or value of goodwill. *Id.* The existence of goodwill in husband's practice was not established, and wife's contention that it was undervalued is therefore without merit.[2]

We turn to a consideration of wife's contention that the trial court erred in valuing the marital residence and wife's automobile. Husband's testimony concerning the home's value was based on a real estate appraisal valuing the home at $145,000. Wife submitted an appraisal valuing the home at $136,000 and testified that the home was in need of repair. The court valued the home at $145,000.

With respect to the value of wife's automobile, husband submitted an exhibit listing a value of $6,425 from the National Automobile Dealers' Association Bluebook. Husband testified he had no reason to believe the car was worth less than the listed value. Wife testified the car was worth only $2,000 and asserted it was in need of repair; although she further testified she had the vehicle appraised, she submitted no appraisal to the court.

We defer to the trial court to resolve any conflict in the evidence of property value. *Schelsky v. Schelsky*, 796 S.W.2d 888, 893 (Mo.App.1990). Further, the trial court is entitled to believe or disbelieve the testimony of either party and can disbelieve expert testimony. *In re Marriage of Smith*, 785 S.W.2d 764, 767 (Mo.App.1990). Here, the evidence supports the property values the trial court adopted. We find no abuse of discretion.

In point two, wife contends the trial court erred in limiting the duration of her maintenance award to thirty-six months. Wife asserts there was no substantial evidence she would be capable of self-support within that period or that she would have sufficient property to provide for her reasonable needs.

The trial court has broad discretion in determining the duration of maintenance, and an appellate court will interfere only if the award is improper or an abuse of discretion. *Mueller v. Mueller*, 782 S.W.2d 445, 448 (Mo.App.1990). If there is a reasonable expectation of an impending change in the parties' financial condition rather than mere speculation as to such a change, an award of limited duration maintenance is proper. *Bixler v. Bixler*, 810 S.W.2d 95, 99 (Mo.App.1991). A party is not required to wait to request modification until it is certain the spouse receiving maintenance will be self-sufficient. *Id.*

In this case, wife has a Master's Degree in special education and at least eight years' recent work experience in that field. The court awarded wife maintenance because of the evidence that full-time employment in wife's field may not have been immediately available at the time of the award, not because wife required additional education or training in order to obtain appropriate employment. Wife received substantial assets from the marital estate, including an award of income-producing property. Further, she is not the custodian of children whose circumstances make it appropriate for her not to seek employment outside the home.[3] Nothing in the record indicates the trial court failed to consider the factors in § 452.335 RSMo (Supp.1991). Wife has failed to prove the court abused its discretion in concluding there was a reasonable probability that she could be-

---

2. Husband does not challenge the trial court's award to husband of $60,000 in "goodwill" from the veterinary practice.

3. Although there was evidence that the parties' son, David, had experienced a seizure disorder, the problem was being controlled by medication; there was no evidence that any side effects he experienced as a result of the medication were continuing or would necessitate wife's presence at home.

come self-sufficient within three years. Point two is denied.

In her third and final point, wife contends the trial court erred in ordering husband to pay only $10,000 of her $37,000 in attorney's fees. We find no error.

Pursuant to § 452.355.1 RSMo (Supp.1991), a court may award attorney's fees and costs "after considering all relevant factors including the financial resources of both parties." An attorney's fee award is within the trial court's discretion, and its ruling with respect thereto is presumptively correct. *Brandt v. Brandt*, 794 S.W.2d 672, 674 (Mo.App.1990).

Wife asserts husband is better able to pay her attorney's fees. However, the parties' financial resources are only one of other relevant factors to be considered in determining whether an attorney's fee award is warranted; they are not a controlling factor. *Plunkett v. Aubuchon*, 793 S.W.2d 554, 560 (Mo.App.1990). Further, wife was awarded substantial assets from which she should be able to pay the fees, *see Mistler v. Mistler*, 816 S.W.2d 241, 256 (Mo.App.1991), and payment will not leave her with a disproportionate share of marital property. *See Bixler*, 810 S.W.2d 95, 102. Lastly, there was no evidence that husband engaged in any conduct causing wife to incur unnecessary legal fees; wife chose to present expert valuation testimony concerning husband's veterinary practice in pursuit of her own financial interests. The trial court did not abuse its discretion in making its attorney's fee award. Point denied.

The judgment of the trial court is affirmed.

CRIST and REINHARD, JJ., concur.