Logan Dow **RICH, Respondent,**

v.

Sharon Ann **RICH, Appellant.**

No. 62932.

Missouri Court of Appeals,
Eastern District,
Southern Division.

March 8, 1994.

Robin Edward Fulton, Fredericktown, for appellant.

Eric Charles Harris, Flat River, for respondent.

CARL R. GAERTNER, Judge.

Sharon Ann Rich (wife) appeals from a decree of dissolution of marriage and a qualified domestic relations order. We affirm in part and reverse and remand in part.

Sharon and Logan Dow Rich (husband) were married on November 27, 1963. The Riches had a son and a daughter during the marriage: Troy Dow, born September 1, 1965, and Sharyl Kaye, born December 20, 1971. Troy died in a car accident on July 18, 1982. The parties separated on September 23, 1991. Husband filed a petition for dissolution of marriage on September 26, 1991. He sought joint legal custody of Sharyl Kaye with temporary physical custody and reasonable visitation rights to be awarded to him and an equitable division of marital property. On October 9, 1991, wife filed her answer to the petition together with a cross-petition in which she sought primary physical custody of Sharyl Kaye, maintenance, child support, and attorney's fees. A hearing on the merits commenced on August 12, 1992.

Husband earns $1,800 a month in net income working as a cable splicer for Southwestern Bell, where he has worked since 1961. He testified that he expected his income to increase based upon recent union contract negotiations which he speculated would lead to a 12–cent increase in his hourly wage rate over the next three years. He also expected his income to increase because he stopped purchasing savings bonds and his office was changing to an urban pay scale which would increase his hourly wage by $1.

In the early years of the marriage, wife had various part-time jobs working for Fuller Brush, Montgomery Ward and Tupperware. For the eleven years leading up to the divorce, however, she was employed as a full-time secretary in the Farmington R–VII School District, earning $700 a month in net income. She also worked part-time in a craft store where she netted $170 a month. Additionally, wife testified that she had taken a part-time consulting job in 1992 which would pay $1,500 when the job ended on January 1, 1993. Furthermore, the school district pays wife $135 per month into a credit union account as tax-deferred compensation in lieu of receiving medical insurance coverage which she waived because she was covered under husband's insurance.

Both parties agreed the marriage was irretrievably broken. Husband testified that they simply grew apart, had nothing in common and could no longer get along. Wife, however, claimed husband's alienation and affection with Nancy Boyer caused the breakup. Wife testified that husband spent a lot of time with Nancy and her daughter, Buffy, in the summer of 1991, while he neglected wife and his daughter. Husband admitted he spent time with Nancy and Buffy that summer. However, he denied engaging in marital misconduct, explaining that he spent time with Nancy and Buffy because he promised Nancy's husband, Mike, who was husband's co-worker and best friend, he would take care of Nancy and Buffy after Mike died. Mike died on June 9, 1991.

At the time of the hearing, the parties' daughter was 20 years old and enrolled in college, preparing to begin her third year. Husband admitted that since the summer of 1991 his relationship with her had been strained, leading to their estrangement in December 1991. Both parties offered evidence of Sharyl's property, which included two certificates of deposit totaling $13,800, an automobile, a checking account and furniture. Neither party claimed an interest in this property.

During the course of their 28–year marriage, the parties acquired a number of assets, including a home with an adjoining lot, a separate land parcel in Smiths Southgate

Subdivision, a truck and van, three IRA accounts, husband's pension with Southwestern Bell, wife's retirement funds in a non-teacher retirement account, Southwestern Bell stock, stock from Southwestern Bell's employee stock option program, Tupperware bonds, funds in the deferred compensation program of the Educational Employees Credit Union which wife received in lieu of medical insurance coverage, a money market account, a certificate of deposit, various savings bonds, traveler's checks, a coin collection, and various items of personal property.

On September 1, 1993, the court entered its decree of dissolution. Both parties timely filed post-trial motions which the trial court heard on October 14, 1993. Thereafter, the court entered its amended decree of dissolution and a qualified domestic relations order (QDRO) regarding husband's retirement benefits.

In its original decree, the court ordered an equal division between the parties of husband's Southwestern Bell pension. However, in its QDRO, the court ordered that only the marital portion of the pension should be evenly divided.

In its amended decree, the trial court did not enter a custody order regarding Sharyl Kaye. The court further concluded that a strict application of Supreme Court Rule 88 in determining child support would be inappropriate and unjust because Sharyl was 20 years old, was enrolled in college, did not live with either party during the 1992 summer, worked during the summer, owned her own automobile, and had substantial savings. The court then ordered husband to pay $50 a week in child support and to maintain medical and automobile insurance for Sharyl until she completed college. The court further ordered that the parties' certificate of deposit valued at $23,438 and money market escrow account totaling $7,500 be consolidated and

held in trust by wife. Wife was then ordered to immediately pay the debt on the parties' automobiles and use the balance of the funds to pay for Sharyl's college expenses.

The court awarded the parties their separate non-marital property, and ordered a nearly equal division of the marital property.[1] The court also awarded wife $100 a month in limited statutory maintenance for a period of five years. Additionally, as a form of limited maintenance, the court ordered husband to maintain wife's status as a covered dependent on his medical insurance through the COBRA program. The court assessed costs against husband and denied wife's request for attorney's fees. This appeal followed.

Our review of the judgment in this court-tried case is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We will sustain the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law or it erroneously applies the law. *Id.* Furthermore, we must make any decision to reverse a judgment because it is against the weight of the evidence with caution and with a firm belief that the judgment is wrong. *Id.; see also T.B.G. v. C.A.G.*, 772 S.W.2d 653, 654 (Mo. banc 1989).

### I. Maintenance

In her first point on appeal, wife challenges the limitations in the maintenance orders. She first argues the court abused its discretion in limiting her statutory maintenance to five years. She contends there was no substantial evidence of any impending change in the parties' financial conditions; therefore, the prospective limitation on the duration of the award was improper.

■ A trial court has broad discretion in determining the duration of maintenance awards, and an appellate court will not interfere absent an abuse of discretion. § 452.-

---

1. The court awarded wife the Smiths Southgate Subdivision lot, valued at $9,000, and miscellaneous marital property such as household furnishings and jewelry. The court further ordered that the home and adjoining lot be sold with the first $9,000 in proceeds to be paid to husband to offset the award of the Smiths lot to wife and the balance of the proceeds to be evenly divided between the parties. The remaining marital property was then divided between the parties with husband receiving $49,337 worth of property and wife receiving $51,844 worth of property. Husband assumed the payment of the parties' 1992 real estate taxes for the home and adjoining lot. Wife assumed a $2,000 loan debt the parties incurred during the marriage. Husband was awarded the income tax dependency exemption for Sharyl.

335.2 RSMo. Supp.1993 [2]; *Law v. Law,* 833 S.W.2d 17, 19 (Mo.App.1992); *In re Marriage of Thomas,* 829 S.W.2d 491, 492 (Mo. App.1992). However, a trial court is justified in limiting the duration of maintenance only where substantial evidence exists of an impending change in the financial conditions of the parties. *Burbes v. Burbes,* 739 S.W.2d 582, 584 (Mo.App.1987). At a minimum, there must be substantial evidence to support a reasonable expectation that such a change will occur. *In re Marriage of Vinson,* 839 S.W.2d 38, 43 (Mo.App.1992); *Thomas,* 829 S.W.2d at 492. "Absent evidence that the financial prospects of the party receiving maintenance will improve in the future, no maintenance award for a limited duration should be entered; it should be of unlimited duration, the amount being subject to modification if such party's financial condition improves." *Vinson,* 839 S.W.2d at 43.

■ In the present case, there is no evidence in the record that wife's financial prospects will be appreciably better October 14, 1997, than they were on the date of the decree. During the seven years prior to trial, wife earned an average annual income of $7,000 and never earned more than $10,500. Currently, she is earning the maximum amount possible for secretaries in her school district and is scheduled to receive modest pay increases every year. She only has a chance to increase her income by changing positions, which she has attempted to do with no success. She has made a reasonable effort to supplement her income with part-time work.

Wife has an Associate of Arts degree in elementary education which enables her to work as a teacher's aide; however, secretarial positions in the school district pay more. She has completed an additional 82 to 86 hours of college coursework. She would like to obtain a Bachelor of Science degree in business, but testified it would require three years of full-time coursework to complete which she cannot manage because of her work demands. Wife also testified her supervisor told her that a bachelor's degree would not lead to a pay increase or better job opportunities in the school district. The record, therefore, reveals that wife is using her education and experience in appropriate full-time employment. There is no evidence to support a rational basis for a determination that she would make substantially more income in the future.

■ On the other hand, there is nothing in the record to indicate that husband's means will decrease. He has worked for Southwestern Bell since 1961. In the seven years before trial, he earned an average annual income of $35,000. Furthermore, the evidence indicates it is reasonably likely his income will increase in the future due to a change in pay scales, union contract negotiations, and his decision to stop buying savings bonds. Where the evidence indicates that the dependent spouse's financial prospects will not improve materially in the future and the means of the spouse providing maintenance are not likely to decrease substantially, the trial court abuses its discretion when it speculates that the original maintenance award will no longer be required in the future. *Thomas,* 829 S.W.2d at 494.

■ We reject husband's argument that the emancipation of Sharyl in two years, wife's receipt of marital and nonmarital property and entitlement to half the proceeds from the sale of the marital home, and her expectation of receiving $250,000 from her parents' trust upon their death serve as predictable changes in her future financial condition, warranting the court's limitation on her maintenance award. Wife did not even include in her monthly expenditures budget the cost of caring for her daughter. Furthermore, while wife may earn extra investment income from the liquid marital and nonmarital assets awarded to her, this does not require an interference with the maintenance award. The trial court did not allow wife an award of attorney's fees, which totaled $7,486.28. Moreover, it is well-settled in Missouri that a spouse is not required to dispose of her assets or consume marital

---

**2.** Unless noted otherwise, all further statutory references are to Revised Statutes of Missouri

1993 Supplement.

property before she would be entitled to maintenance. *Whitmore v. Whitmore,* 732 S.W.2d 572, 574 (Mo.App.1987). Finally, it is purely speculative to maintain that the other events cited by husband will occur within five years of the court's decree.

Accordingly, the order is reversed, and we enter the order which the trial court should have entered. *Beeman v. Beeman,* 816 S.W.2d 15, 17 (Mo.App.1991). Maintenance shall remain at $100 per month unless and until a proceeding for modification is brought and a change is deemed appropriate under § 452.370.1.

■ Wife further complains of the termination of medical insurance at the end of three years. We find no error in this order. The limitation is in accord with the provisions of the federal law known as COBRA which permits husband to maintain wife's coverage for up to three years. 42 U.S.C.A. §§ 300bb–1(a), 300bb–2(2)(A)(iii), 300bb–3(3) (1991); *see also In re Marriage of Davis,* 821 S.W.2d 123, 124 (Mo.App.1991).

In her second point, wife challenges the sufficiency of the statutory maintenance award, arguing that it does not cover all of her expenses.

■ The trial court has a great deal of discretion in determining maintenance. *In re Marriage of Klein,* 837 S.W.2d 567, 569 (Mo.App.1992); *Clark v. Clark,* 801 S.W.2d 95, 97 (Mo.App.1990). Section 452.335 provides that the maintenance award must be just. The statute, however, "does not require the court to award maintenance adequate to meet all of the needs of the spouse even if the maintaining spouse has sufficient resources to provide such support." *Steinmeyer v. Steinmeyer,* 669 S.W.2d 65, 68 (Mo. App.1984). The court simply must look at the circumstances of the parties and the marriage to decide what may "justly" be required of the maintaining spouse. *Id.*

■ In the present case, both parties submitted income and expense statements to the trial court. Wife's statements indicate that she earns $990 in net income per month and spends $1,087 per month.[3] The award of

$100 in maintenance extinguishes wife's $97 shortfall. Wife did not offer evidence showing any further need. We fail to see how the court's award could be any more just. The trial court did not abuse its discretion. Point denied.

In her third point, wife claims the trial court erred in failing to order husband to pay for wife's automobile insurance because husband testified he was willing to do so.

■ The trial court is not bound by any stipulation, agreement or waiver regarding maintenance. Instead, it must exercise its broad discretion to determine whether to grant maintenance and to determine the amount and duration of any such award based upon the factors set forth in § 452.-335.2. *Layton v. Layton,* 673 S.W.2d 462, 463 (Mo.App.1984).

■ We already determined the court awarded wife a sufficient amount of maintenance in the form of medical insurance coverage and monthly payments of $100. Also, she was awarded a substantial amount of marital property the income from which she can use to meet this expense. The trial court did not abuse its discretion. Point denied.

## II. Child Custody and Support

In her fourth point, wife claims the trial court abused its discretion in refusing to award custody of Sharyl Kaye to either party. She charges that she has been Sharyl's custodial parent since the parties separated and both parties agree she should maintain primary physical custody; therefore, the trial court should have ordered joint custody with an award of primary physical custody to wife and reasonable visitation rights for husband.

■ In Missouri, it is mandatory for a trial court in a dissolution case, where it has jurisdiction to do so, to provide for the custody of a minor dependent child of the parties. *Miner v. Miner,* 669 S.W.2d 628, 629 (Mo. App.1984). Furthermore, pursuant to § 452.340.3, a parent must continue to make child support payments until the child dies or: (1) marries; (2) enters active military duty; (3) becomes self-supporting; or (4)

---

**3.** These figures are adjusted in accordance with the amended dissolution decree.

reaches the age of 18. However, if the child enrolls in a vocational or higher education institution no later than the first day of October following graduation from a secondary school, the parent's child support obligation continues until the child completes his education or reaches the age of 22, whichever occurs first. § 452.340.5.

In its amended dissolution decree, the court indicated it would not enter a custody order because Sharyl was over the age of 18. However, the court indicated the parties' parental support obligations would continue because Sharyl was enrolled in college. The court then ordered husband to pay $50 per week in child support and to maintain medical and automobile insurance for Sharyl until she graduates from college or "is otherwise emancipated as provided by law."

In essence, therefore, the trial court found that Sharyl was emancipated for purposes of child custody but was not for purposes of child support. As a result, the trial court's orders regarding child custody and support, when reviewed in conjunction with each other, are inconsistent and contradictory. At the time of the court's dissolution decree, Sharyl clearly was not emancipated for either purpose pursuant to the guidelines established in § 452.340.

This fact, however, does not require reversal under the circumstances of this case. It is well-settled that we do not decide moot questions. *Holland Industries, Inc. v. Division of Transp. of Mo.*, 763 S.W.2d 666, 667 (Mo. banc 1989); *Brand v. Boatmen's Bank*, 824 S.W.2d 89, 91–92 (Mo. App.1992); *Cross v. Cross*, 815 S.W.2d 65, 66 (Mo.App.1991). A case becomes moot on appeal if an event occurs that alters the parties' position so that the controversy ceases, making it impossible for the appellate court to grant effectual relief. *Brand*, 824 S.W.2d at 92; *K.E.B. v. H.G.B.*, 782 S.W.2d 85, 86 (Mo.App.1989). In the present case, Sharyl turned 22 years old on December 20, 1993, and therefore, pursuant to § 452.340.5, she is no longer a minor dependent child; thus, the trial court no longer needs to provide for her custody. *See Miner v. Miner*, 669 S.W.2d 628, 629 (Mo.App.1984). Point denied.

In her fifth point, wife charges the trial court erred in ordering that some of the parties' marital property be held by wife in trust for the payment of their daughter's education.

Wife cites *Whitmore v. Whitmore*, 732 S.W.2d 572 (Mo.App.1987), for the proposition that marital assets cannot be used for the payment of maintenance; thus, by analogy, they also cannot be used for the payment of child support. However, wife misconstrues *Whitmore*, which merely prohibits requiring a spouse to consume marital property before permitting the spouse to receive maintenance. *Id.* at 574. The case in no way restricts the *form* in which such a payment may be made.

Furthermore, wife cites *Echele v. Echele*, 782 S.W.2d 430 (Mo.App.1989), for the idea that the only approved method in Missouri for determining parental support obligations for payment of college expenses is based upon the parties' incomes. The case, however, simply addresses the growing problem of ambiguous and indefinite dissolution decrees, especially in relation to child support orders for the payment of educational costs. *Echele*, 782 S.W.2d at 433–37. The case in no way limits the *form* that such payments may take.

A trial court, in fact, has broad discretion and flexibility in fashioning child support payments. *In re Marriage of Toomey*, 636 S.W.2d 313, 315 (Mo. banc 1982); *Heutel v. Heutel*, 803 S.W.2d 84, 89 (Mo.App. 1990); *Echele*, 782 S.W.2d at 435. We have placed very few constraints on this discretion, requiring only that: (1) the court consider the factors set forth in § 452.340.1; (2) the court issue an order that accommodates the needs of the child and the ability of the parents to meet those needs, *Toomey*, 636 S.W.2d at 315; and (3) the court issue an order that is sufficiently certain without requiring external proof or another hearing for enforcement. *Heutel*, 803 S.W.2d at 89; *Echele*, 782 S.W.2d at 436. It is apparent from the amended decree that the trial court sought to meet these standards.

The court was clearly attempting to ensure that Sharyl receive a college education while providing the parties a simple means for paying her expenses. The record indicates both parties had little net income to spare after meeting their monthly expenditures. Furthermore, the decree substantially followed the sample order set forth in *Echele*, 782 S.W.2d at 437, rendering it a certain and enforceable support order. Finally, the court gave wife no discretionary control over the trust, ordering that: (1) it first be used to pay off a specific marital debt; (2) any remaining funds then be used to pay for Sharyl's college expenses within specified limits until she completes college, reaches the age of 22, or otherwise becomes emancipated; and (3) any residue be evenly divided between the parties. The court did not abuse its discretion in devising this child support payment scheme. Point denied.

Wife in her sixth point challenges the award of child support in the amount of $50 per week. Wife contends the trial court failed to offer sufficient reasons for deviating from awarding the presumed child support amount under the guidelines established in Missouri Supreme Court Rule 88.01 and Civil Procedure Form No. 14.

Under § 452.340, the trial court must consider the factors set forth in Rule 88.01. Rule 88.01 in turn requires the use of Form No. 14 in determining the amount of child support to order. The figure calculated pursuant to Form No. 14 is presumed to be correct and may only be deviated from upon a written finding or specific finding on the record that the application of Form No. 14 would be unjust and inappropriate after consideration of all relevant factors as set forth in Rule 88.01 and § 452.340.1.

We note that the trial court complied with these guidelines in deviating from awarding child support in accordance with Form No. 14 by finding and including in the decree that "the strict application of Rule 88 would be unjust and inappropriate as the child is 20 years of age, enrolled in Southeast Missouri State University, did not spend the entire summer of 1992 in either parties' residence, works during the summer, will own her own car, and has substantial savings." Point denied.

### III. Marital Property

In her seventh point on appeal, wife challenges the division of marital property. Specifically, she claims the trial court erred in failing to sufficiently consider husband's conduct during the marriage.

The trial court is vested with broad discretion in dividing marital property. We will only interfere if the division is so heavily and unduly in favor of one party that it amounts to an abuse of discretion. *Schinker v. Schinker*, 747 S.W.2d 761, 763 (Mo.App.1988). The trial court must "divide the marital property in such proportions as the court deems just after considering all relevant factors." § 452.330.1. Included in these factors is the conduct of the parties during the marriage. § 452.330.1(4). However, marital misconduct is not a factor unless the misconduct places extra burdens on the non-offending spouse. *Balven v. Balven*, 734 S.W.2d 909, 913 (Mo.App.1987).

In the present case, neither party requested the court to issue findings of fact or conclusions of law. Where the trial court does not perform this task, we consider any fact issue raised on appeal as having been found in accordance with the result the trial court reached. Rule 73.01(a)(2); *Liberty v. Liberty*, 826 S.W.2d 381, 383 (Mo.App.1992).

Under this standard, it is clear the court below found that the evidence presented relating to husband's alleged misconduct was contradictory and inconclusive; therefore, the evidence was insufficient to affect the division of property. *See Schinker*, 747 S.W.2d at 763. Upon review of the record, we conclude wife failed to conclusively establish that husband engaged in any marital misconduct. The division of marital property was approximately even and, based upon all other relevant factors, just. We find no abuse of discretion by the trial court. Point denied.

Wife asserts in her eighth point that the trial court erred in dividing between the parties only the marital portion of husband's Southwestern Bell pension.

In its original dissolution decree, the court ordered that husband's "pension plan with Southwestern Bell be divided one-half to each party pursuant to a QDRO Order to be prepared by counsel and entered herein." Neither party objected to this order in their post-trial motions. In the QDRO, the court divided only the marital portion of the pension.

Wife argues husband requested that the court evenly divide the entire pension, which is reflected in the court's order in the original decree. She further contends the trial court was bound by husband's request and thus lacked the authority to modify the order to provide for division of only the marital portion of the pension.

 We are unable to find any evidence in the record indicating that husband requested the court to divide the entire pension. In his proposed property division, husband in fact requested a division of $121,446 of the pension which represents the estimated marital portion of the pension. Furthermore, it is well-settled in Missouri that only the portion of retirement benefits which are acquired during marriage are considered marital property subject to division under § 452.330. *Kuchta v. Kuchta,* 636 S.W.2d 663, 665–66 (Mo. banc 1982); *Baker v. Baker,* 804 S.W.2d 763, 764–65 (Mo.App.1990); *In re Marriage of D'Aquila,* 680 S.W.2d 446 (Mo. App.1984). The trial court has broad discretion in dividing marital property. However, it has no authority, acting on its own, to divide non-marital property and in fact commits *prima facie* error when it awards a spouse a partial interest in the other spouse's non-marital property. *Mabon v. Mabon,* 833 S.W.2d 488, 489 (Mo.App.1992). It is absurd for wife to assert the trial court erred in exercising its broad discretion to avoid a commission of *prima facie* error by altering its original decree to properly divide the pension. Point denied.

### IV. Attorney's Fees

In her final point, wife asserts that the trial court erred in refusing to order husband to pay her attorney's fees which accrued during the dissolution proceeding.

 As a general rule, the parties to a dissolution are to pay their own attorney's fees. *Mistler v. Mistler,* 816 S.W.2d 241, 256 (Mo.App.1991); *Echele v. Echele,* 782 S.W.2d 430, 441 (Mo.App.1989). However, the trial court may award attorney's fees. § 452.-355.1. The court has broad discretion in awarding or denying attorney's fees, and its ruling will only be disturbed on appeal upon a showing of abuse of discretion. *Cohn v. Cohn,* 841 S.W.2d 782, 787 (Mo.App.1992); *In re Marriage of Vinson,* 839 S.W.2d 38, 44 (Mo.App.1992); *Law v. Law,* 833 S.W.2d 17, 19 (Mo.App.1992). We find no abuse of discretion here.

 Wife argues she is entitled to attorney's fees because husband engaged in marital misconduct, and he originated the dissolution proceeding, and he is better able to pay for the fees. As we already noted, wife failed to prove conclusively that husband engaged in marital misconduct. Furthermore, the parties' financial situation is only one of other relevant factors the trial court must consider in determining whether an attorney's fee award is justified; it is not a controlling factor. *Cohn,* 841 S.W.2d at 787. Additionally, wife was awarded substantial assets which enable her to pay the fees. *Id.; Mistler,* 816 S.W.2d at 256. Wife failed to show that the trial court abused its discretion. Point denied.

The trial court's judgment as to limited statutory maintenance is reversed. Maintenance shall remain at $100 per month unless and until a proceeding for modification is brought and a change is deemed appropriate. The remainder of the court's judgment is affirmed.

GRIMM, P.J., and CRAHAN, J., concur.