Sofia S. **FRIEDMAN**,
Plaintiff/Respondent/Cross–Appellant,

v.

Roger **FRIEDMAN**,
Defendant/Appellant/Cross–Respondent.

Nos. 70359, 70360.

Missouri Court of Appeals,
Eastern District,
Division One.

Feb. 17, 1998.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 20, 1998.

Application for Transfer Denied
May 26, 1998.

320

Michael A. Gross, Cynthia A. Sciuto, St. Louis, for appellant.

Rosenblum, Goldenhersh, Silverstein & Zafft, P.C., Merle L. Silverstein, Sanford J. Boxerman, Clayton, for respondent.

PUDLOWSKI, Judge.

In this appeal from a divorce action, Roger Friedman (Roger) alleges the trial court erred in its division of marital property between spouses, contending it was an abuse of discretion to award Sofia S. Friedman (Sofia) a large portion of marital property. Roger also alleges the trial court erred in classifying one thousand shares of stock as marital when they were purchased from allegedly separate funds located in a joint account, requiring Roger to pay part of the children's college costs, awarding maintenance to Sofia, and awarding attorney fees to Sofia. Sofia cross-appeals, requesting larger maintenance payments over an unlimited time period, and alleging the trial court erred in designating bank account funds as Roger's separate property. We affirm in part and reverse in part.

### I. Background

Sofia and Roger met in 1978 and were married in 1980. Roger has owned and operated his own business since 1977. Sofia moved to the United States from Russia in 1977, where she earned the equivalent of a Ph.D. in music. They have two sons: Sanford, Sofia's son adopted by Roger, and Matthew, born to the couple in 1984. After they were married, the couple enjoyed a comfortable lifestyle on the income from Roger's business. While Sofia continued to teach piano lessons and work in her husband's business,

she was mainly a homemaker and did not work outside the home.

Sofia filed for divorce in 1990. The court found the marriage to be irretrievably broken, but did not ascribe serious marital fault to either party. It calculated marital property to be worth $661,929.00. The court awarded Sofia $504,589 and Roger $59,386 of the marital property. It calculated Sofia's separate property to be worth $33,695 and Roger's separate property as $1,124,562. Roger was ordered to pay maintenance to Sofia for five years at the rate of $2,500 per month, and monthly child support for Matthew of $800 in addition to two-thirds of Matthew's private school costs and all his college costs.

A key item of marital property, awarded to Sofia, is a revocable trust (S & M Trust) designed to care for the educational needs of Matt and Sanford with Sofia as trustee. Sofia has unlimited control over the assets of the trust, including authority to invade the principal and pay funds to herself. She will become the beneficiary of the trust when Matthew reaches thirty. At the time of trial, the S & M Trust had a portfolio value of $233,509. It constitutes a large portion of the $504,589 award to Sofia.

### II. Division of Marital Property

In his first point on appeal, Roger complains he received only fifteen percent of the marital property. He alleges the trial court abused its discretion in its division of marital property because it failed to properly consider all the factors mandated by Section 452.330 RSMo (1994), and because it misconstrued the evidence so as to overemphasize the value of Roger's separate property.

■ The trial court's division is based on Section 452.330 RSMo (1994), which dictates that "the court shall divide martial property in such proportions as the court deems just" after considering several statutory factors.[1]

---

1. The five factors include:
 1. The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children;
 2. The contribution of each spouse to the acquisition of the marital property including the contribution of a spouse as homemaker;

The statute does not require that the division of property be equal, but only that it is fair in light of the circumstances of the individual case. *Carter v. Carter*, 940 S.W.2d 12, 16 (Mo.App. W.D.1997).

The trial court has wide discretion in making its determination, and only abuses its discretion if the award is heavily and unduly weighted toward one party. *In re Marriage of Hash*, 838 S.W.2d 455, 459 (Mo. App. S.D.1992). We may reverse the trial court's determination only if it erroneously declares or applies the law, if it is against the weight of the evidence, or if it is not supported by substantial evidence. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Evidentiary and factual evaluations of the trial court receive considerable deference. *In re Marriage of Fry*, 827 S.W.2d 772, 775–76 (Mo.App. S.D.1992).

While the division of marital property was significantly weighted toward Sofia, we cannot say that the distribution was an abuse of discretion. The trial court properly considered the statutory factors.

First, Roger and Sofia's differing economic circumstances support an award weighted more heavily toward Sofia. A court may divide marital property so as to provide future support for a formerly economically dependent spouse. *Hash*, 838 S.W.2d at 460. In the instant case, the trial court considered that Roger has significantly more separate property, and through his business, a large yearly income. Sofia's separate property is made up of jewels and furs. Almost half of the value of the marital property awarded to Sofia is embodied by the S & M Trust. Though she may invade the principal of the trust, the primary purpose of the fund is to care for her children's educational needs. Further, the court found that her musical talents and skills give her considerably less potential for future income than her former husband. Her earnings will largely result from her teaching piano classes—an occupation that nets her significantly less than Roger's business dealings.

While Roger contributed financially from work outside the home, the court acknowledged that Sofia contributed to the acquisition of marital property as both a satisfactory homemaker and, on occasion, a business secretary. Additionally, Sofia has custody of Matthew, who has been diagnosed with attention deficit disorder. Testimony at trial showed that costs of his activities, doctor's bills, and pharmaceutical bills are extensive.

The trial court specifically found that neither party had engaged in significant misconduct. While Roger claims Sofia engaged in misconduct by poisoning Matthew against him, the court believed that any attempt to alienate Matthew occurred after the marriage was irretrievably broken. We defer to the trial court on issues of credibility of witnesses. *Fry*, 827 S.W.2d at 773; *Brawley v. McNary*, 811 S.W.2d 362, 365 (Mo. banc 1991); Rule 73.01(c)(2). Point denied.

In his second point, Roger alleges the trial court erred in finding that one thousand shares of stock were marital property. Roger acknowledges his placement of the shares into a joint bank account created a presumption of donative intent, and that clear and convincing evidence is necessary to counter the presumption. *In re Marriage of Jennings*, 910 S.W.2d 760, 763 (Mo.App. S.D. 1995). The only evidence Roger cites was his testimony that he never intended to make a gift of the stock. Since the trial court apparently did not credit Roger's testimony on this matter, and the trial court is in a better position to judge the credibility of witnesses, Roger has not successfully rebutted the presumption of donative intent. *Brawley*, 811 S.W.2d at 365. Point denied.

In her cross appeal, Sofia argues the trial court erred in classifying funds in a joint bank account ("MTB 113") as separate property. Roger initially deposited inherited money into MTB 113. He invested MTB 113 funds in certificates of deposit and money market accounts, and loaned funds to his business. Roger left interest earned on the

3. The value of the nonmarital property set apart to each spouse;
4. The conduct of the parties during the marriage; and

5. Custodial arrangements for minor children.

investments in MTB 113. The interest, earned during the marriage, is marital property. After expert testimony tracing the source of the funds in MTB 113, the trial court awarded Roger $207,507 of the funds therein. Though she did not avail herself to the opportunity to present her own, contrary evidence at trial, Sofia contends that trial testimony of Roger's accountant expert was inadequate to trace separate funds in the joint account.

■ The trial court's determination was supported by substantial evidence because Roger sustained his burden of tracing the commingled funds. *See* Section 452.330.4 RSMo (1994). Roger's expert witness detailed each transaction in the account to trace the funds. He considered the money in the account as generally separate property, since it was opened by Roger with separate property. When separate funds in the account earned interest, the expert placed the interest in a separate "joint" spreadsheet column, though the funds remained in the same account. When the account purchased stock, the expert assumed the stock was purchased with separate funds. However, if the cost of the stock exceeded the separate funds in the account, he considered that marital funds had contributed to the purchase. After accounting for all transactions, the expert considered the amount in the "joint" column to be marital property and the rest to be separate property. While the expert admitted that his methodology tended to increase the amount designated as separate property, the trial court has discretion to believe or disbelieve expert testimony. *Gulmen v. Gulmen*, 851 S.W.2d 37, 38 (Mo.App. E.D.1993). The expert testimony was substantial evidence to trace the commingled funds. Point denied.

### III. Child Support

Roger claims the trial court erred when it ordered him to pay two thirds of Matthew's high school costs and all his college costs.

Roger reasons that he should not be responsible for paying education costs since education costs are the stated purpose of the S & M Trust. He argues that the court should have considered Matthew's assets from the trust in determining the extent of his child support obligation, because Section 452.340.1(1) RSMo (1994) [2] requires the court to consider the "resources of the child." *See Hohenberg v. Hohenberg*, 703 S.W.2d 555, 558 (Mo.App. E.D.1985).

■ When considering the statutory factor "financial resources of the child," the court must consider a trust which has as its sole benefit care of the child. *Id.* If a parent has provided for his children's support through a trust set up during the marriage, the parent is not required to provide child support for the child again. *Id.*

■ However, since the S & M Trust did not completely provide for Matthew's needs, and the support order eliminates the possibility of a double recovery, the trial court did not abuse its discretion in the support award. The trust recites that only twenty percent of the trust is allocable to Matthew; the eighty percent balance going to Sanford. Yearly income of the trust is projected to be about $9,000 a year, leaving $1,800 for Matthew. Therefore, the trust does not necessarily meet all of Matthew's educational needs and is distinguishable from the scenario envisioned by *Hohenberg*. Additionally, Roger's obligation will be reduced by any scholarship or "other aid" received by Matthew for college, including income from the S & M Trust.[3] This means that Matthew will not have additional assets left over from Roger's educational support when he reaches adulthood. *See, Hohenberg* at 558. The court properly considered the extent of coverage by the trust and other sources of income, including the trust in its award of education fees. The trial court did not abuse its discre-

---

**2.** Factors in determining the amount of child support include:
1. Financial needs and resources of the child;
2. The financial resources and needs of the parents;
3. The standard of living the child would have enjoyed had the marriage not been dissolved;

4. The physical and emotional condition of the child, and his educational needs.

**3.** The trial court order also limited the extent of Roger's financial responsibility to the cost of equivalent schooling at the University of Missouri—Columbia.

tion in its award of child support. Point denied.

### IV. Maintenance

Next, Roger contends the trial court erred in awarding Sofia maintenance of $2,500 for five years. He asserts that the award was against the weight of evidence, or alternatively, that the amount of the award exceeded the trial court's findings of Sofia's reasonable needs. Roger insists that Sofia has enough income producing property from the marital property division to provide for her needs, and that she has potential to make a living teaching and performing music. Therefore, Roger reasons, she has enough property and potential for income to make maintenance unnecessary.

Awarding maintenance is a matter resting within the sole discretion of the trial court. *Holmes v. Holmes*, 878 S.W.2d 906, 910 (Mo.App. E.D.1994). Section 452.335 governs an award of maintenance. A court may grant maintenance only if it finds that the spouse seeking maintenance: 1) lacks sufficient property to provide for his or her reasonable needs; and 2) is unable to support himself or herself through appropriate employment. Section 452.335.1(1–2) RSMo (1994). On appeal, review is limited to whether the trial court has abused its discretion. *Id.* "Unless the amount of maintenance is patently unwarranted or is wholly beyond the means of the paying spouse, interference by this court is not warranted." *Sturgeon v. Sturgeon*, 849 S.W.2d 171, 174 (Mo.App. E.D.1993).

Though Roger argues that maintenance is unnecessary, we hold award of maintenance was proper because Sofia does not have sufficient income to meet her reasonable needs. Sofia made $2,641 and $3,678 in 1991 and 1992, respectively, from teaching and performing music. The trial court found that her current income from part time teaching was $7,000, and both parties accept

this figure on appeal. Additionally, the trial court found that she was likely to have yearly income of $9,000 from marital investment property, excluding her home and any proceeds she might receive from the S & M Trust.[4] The $16,000 from music and investments is not sufficient to meet Sofia's reasonable needs based on either parties' estimate of Sofia's reasonable expenses.[5] She cannot yet support her reasonable needs through property already owned, nor by work. *Id.* Therefore, the court properly awarded maintenance.

Both parties also take issue with the amount of the award. Sofia argues that the award is inadequate to meet her needs, while Roger argues that the award is too large. We have reviewed the record on appeal, and find no abuse of discretion. Both parties' points relating to maintenance are denied.

Next, Sofia argues that it was improper for the court to impose a five year limit on Roger's support obligation. We agree.

A trial court may limit the duration of maintenance only where substantial evidence supports a reasonable expectation that a change in the parties' financial condition is imminent. *Rich v. Rich*, 871 S.W.2d 618 (Mo.App. E.D.1994). Absent substantial evidence of such an impending change, the trial court must award maintenance for an unlimited duration with the award being subject to modification when and if the spouse's financial condition improves. *Id.* There is a judicial preference for maintenance awards of unlimited duration. *Tillock v. Tillock*, 877 S.W.2d 161, 163 (Mo.App. E.D.1994). The trial court has broad discretion in determining the duration of maintenance, and will be reversed only for an abuse of discretion. *Cohn v. Cohn*, 841 S.W.2d 782, 786 (Mo.App. E.D.1992).

The trial court abused its discretion in limiting the duration of maintenance. The court based the limited duration award on

---

4. Even though the trust is for the children's educational needs, the court noted that Sofia had practical control and the trust would produce income for her. "The court simply cannot accept that the S & M Trust is solely for the benefit of the sons, Matthew and Sanford."

5. Roger concedes that Sofia's reasonable yearly need is $40,000 contending that the trial court's order implicitly so found. Sofia claims that her reasonable needs are considerably greater than Roger's estimate.

the "reasonable probability" that Sofia would find employment within five years, with an income in the "mid-twenties." However, the evidence shows that, while she possesses the equivalent of a doctorate in music, Sofia has not worked for the past ten years of marriage except on a part time basis. She has worked in the United States, but never produced enough income to support herself. At the time of trial, Sofia had not obtained permanent, full-time employment and there is no evidence of any specific job that awaits Sofia. Since future employment for Sofia is speculative, the trial court lacked substantial evidence necessary to support a maintenance award of limited duration.

Accordingly, the order is reversed, and we enter the order which the trial court should have entered. *Rich*, 871 S.W.2d at 624. Maintenance shall remain at $2,500 a month unless and until a proceeding for modification is brought and a change is deemed appropriate under Section 452.370.1 RSMo (1994).

V. Attorney's Fees

 Roger argues that the trial court abused its discretion in forcing him to pay sixty percent of Sofia's attorney fees. The court has broad discretion to award attorney's fees, and the award will be affirmed unless it is an abuse of discretion. *Wenger v. Wenger*, 876 S.W.2d 735, 741 (Mo.App. E.D. 1994). While he alleges such an award is "patently unfair," Roger has not shown that the award was an abuse of discretion, and has cited no cases that are directly applicable. Rule 84.04(d). Point denied.

Therefore, the trial court's judgment as to limited statutory maintenance is reversed and remanded so that an order may be entered according to this opinion. The remainder of the trial court's judgment is affirmed.

GRIMM, P.J., and GARY M. GAERTNER, J., concur.