Barry Lee FAINTICH, Petitioner–
Appellant,

v.

Sheryl FAINTICH, Respondent–
Respondent.

No. 62882.

Missouri Court of Appeals,
Eastern District,
Division One.

Sept. 28, 1993.

Theodore S. Schechter and Michael L. Schechter, Schechter and Watkins, Clayton, for petitioner-appellant.

Daniel P. Card, II, David B. Lacks, St. Louis, for respondent-respondent.

CRANDALL, Presiding Judge.

Husband, Barry Lee Faintich, appeals from the pendente lite (PDL) order of the trial court in favor of wife, Sheryl Faintich, in their action for dissolution of marriage. We affirm.

Husband and wife were married in August 1974 and separated in June 1991. Two children were born of the marriage. At the time of the PDL hearing, one of the children was almost 15 years of age and the other was 12 years of age. Husband filed his petition for dissolution of marriage in August 1991.

In her PDL motion, filed in December 1991, wife sought temporary maintenance, child support, attorney's fees, and costs. Attached to wife's motion was her affidavit in which she asserted that she was without sufficient means to support herself and that husband was earning a "substantial and lucrative income." In her amended motion, wife sought child support in the amount of $1,500.00 per child, temporary maintenance in the amount of $13,000.00 per month, attorney's fees in the amount of $25,000.00, and costs in the amount of $7,500.00.

At the time of the hearing on her PDL motion, wife was 44 years of age. She testified that she held a Bachelor's Degree in Fine Arts and in the past worked as a freelance graphic designer. When she worked, she did so primarily during the children's school hours. The gross income from her business for the years 1988 and 1989 was about $10,000.00. At the time of the hearing, she testified that she had not been active in her own business since husband and she separated in June 1991, but that she had secured employment recently as a sales representative for a graphic arts studio. Her salary was to be based solely on commission. Wife also received $116.00 per month in the form of a payment on a promissory note payable to her. She stated that her average total monthly expenses were $20,171.62.

Husband testified that he was the sole owner of a business which deals in rare coins, gold, silver, jewelry, and different types of antiques and collectibles. His best year in business had been 1980 when a boom in precious metals had occurred and when he had earned approximately $500,000.00. He stated that the market in coins, gold, and silver was depressed and that his business had suffered a loss for the 1991 tax year. As a result, it was necessary for him to reduce his salary to $60,000.00. He stated that his total net income was $3,500.00 per month.

Throughout the marriage, husband and wife enjoyed an affluent lifestyle. They took numerous vacations. They dined out at restaurants frequently. Husband usually paid for these meals and vacations in cash. Husband and wife each drove expensive, European cars. Wife testified that she spent $3,000.00 per month for her clothing alone and that husband gave her $700.00 to $800.00 a week in cash for spending money. Both children attended expensive private schools. Each child had a trust account in his name in the amount of $150,000.00.

According to husband's statement of property, he and wife owned securities valued at over $110,000.00. Third persons owed husband debts totalling $217,000.00. In addition, husband had retirement accounts in excess of $250,000.00. Wife's retirement accounts were worth less than $5,000.00.

The trial court found that husband's gross income was $20,000.00 per month. The court ordered husband to pay temporary maintenance of $3,500.00 per month, child support for both children for a total of $1,550.00 per month, attorney's fees in the amount of $15,000.00, and $2,500.00 for court costs. The court also ordered husband to pay the cost of

each child's attending his respective private school, the monthly home mortgage payment, the real estate and personal property taxes, the homeowner's insurance, the automobile insurance on wife's vehicle, the medical insurance on wife and the children, and any medical, psychological, and dental costs not covered by insurance. The court ordered husband to pay $2,702.00 to a certified public accountant who testified as wife's expert at the PDL hearing.

In his first point, husband contends that the trial court erred in ordering him to pay temporary maintenance and the other expenses enumerated above. He does not challenge, however, the trial court's order pertaining to child support. He asserts that the trial court's total award to wife amounted to $6,343.59 per month and therefore exceeded his ability to pay. He also claims that the trial court's finding that he earned $20,000.00 per month was unsupported by any evidence.

■ We will uphold the trial court's order unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976). The court's discretion in awarding temporary maintenance and attorney's fees pendente lite is broader than at the dissolution hearing. *Camden v. Camden*, 844 S.W.2d 75, 78 (Mo. App.E.D.1992). "A reviewing court is extremely cautious about altering judgments regarding such allowances because they are temporary and their effects do not extend beyond the final hearing of the case." *Id.* (quoting *Cross v. Cross*, 790 S.W.2d 928, 929 (Mo.App.1990)).

■ Section 452.315, RSMo (1986) authorizes a court to issue orders on motions for temporary maintenance. In determining whether an award is warranted, the court must consider the relevant factors enumerated in § 452.335, RSMo (Cum.Supp.1992), which include:

(1) The financial resources of the party seeking maintenance, . . . and his ability to meet his needs independently . . . ; ·

(2) The time necessary to acquire sufficient education or training to . . . find appropriate employment;

(3) The comparative earning capacity of each spouse;

(4) The standard of living established during the marriage;

(5) The obligations and assets, including the marital property . . . and the separate property . . . ;

(6) The duration of the marriage;

(7) The age, and the physical and emotional condition of the spouse seeking maintenance;

(8) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance;

(9) The conduct of the parties during the marriage; and

(10) Any other relevant factors.

The trial court has broad discretion in applying these factors; and it determines the witnesses' credibility and evaluates the merits of each party's expense claims. *Eckstein v. Eckstein*, 748 S.W.2d 945, 946–947 (Mo.App. 1988).

■ It is clear that husband's evidence regarding his income at the time of the PDL hearing did not support the PDL award. In making maintenance awards, however, the court may consider both the past and present earnings of the spouse against whom maintenance is sought. *Henderson v. Henderson*, 822 S.W.2d 474, 476 (Mo.App.1991). In certain instances, the court may impute income to a spouse according to what he could have earned by use of his best efforts to gain employment suitable to his capabilities. *Id.* This rule is especially applicable in the case where a spouse voluntarily reduces his income. *Id.*

■ In the instant action, the trial court could have discounted husband's explanation for the necessity of reducing his salary. The court's finding that husband earned $20,000.00 per month and the subsequent award to wife was based not only upon husband's current standard of living, but also upon standard of living he historically enjoyed with wife. In addition, husband was the sole

owner of the business which paid his salary. As such, husband had complete control over his income, either in the amount of effort he expended on his business endeavors or in the amount of remuneration he determined for himself. Moreover, husband testified that he was willing to pay $1,000.00 per month in maintenance and almost $2,000.00 for the mortgage payment, in addition to providing medical coverage for wife and the children. Given his own testimony regarding his net earnings of only $3,500.00, it is unclear how he intended to pay in accordance with his own suggestions to the court. Also, approximately one-third of the trial court's award covered the mortgage on the marital home occupied by wife and the two minor children. The house was a marital asset in which husband retained a substantial interest.

Husband next asserts that the trial court failed to impute any income to wife from her graphic arts business, based on her earnings in 1988 and 1989. Yet, wife testified that she had not been active in her own business for at least one year prior to the hearing. She also stated that her job working for a graphic arts studio was a new position and that her income was based exclusively on commissions. There was therefore no way to predict wife's income at the time of the hearing.

The trial court did not abuse its broad discretion in entering its PDL order. Husband's first point is denied.

In his second point, husband contends that the trial court abused its discretion when it ordered him to pay $2,702.00 in fees to wife's expert witness. The expert was a certified public accountant who testified regarding financial matters relative to the marriage.

Section 452.355, RSMo (Cum.Supp.1992) authorizes a trial court to order a party to pay a reasonable amount of the other party's attorney's fees and costs. If an award is to be made, the trial court must consider "all relevant factors including the financial resources of both parties." Section 452.355.1.

As between the parties to the present action, husband had the greater income and the greater proportion of the assets with which to pay the expert's fee. The expert was necessary to establish the cost of the lifestyle that husband and wife were maintaining up to the time of the separation. Because husband controlled the finances during the marriage and because husband paid for many expenditures with cash, it was necessary for wife to elicit the services of an accountant to reconstruct the spending patterns of the family. Lastly, the court ordered husband to pay only about one-third of the expert's bill. Based upon the record before us we cannot say that amount was unreasonable. The trial court did not abuse its discretion in ordering husband to pay a portion of the accountant's fees. Husband's second point is denied.

The judgment of the trial court is affirmed.

REINHARD and CRIST, JJ., concur.