**Nancy MONSEES, Respondent,**

v.

**Anthony B. MONSEES, Sr., Appellant.**

**No. WD 49788.**

Missouri Court of Appeals,
Western District.

Sept. 12, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 31, 1995.

Betty K. Wilson, Columbia, for respondent.

Michael P. Riley, Michael Smith, Jefferson City, for appellant.

Before LAURA DENVIR STITH, P.J., and LOWENSTEIN and HANNA, JJ.

LOWENSTEIN, Judge.

This is an appeal from a dissolution of marriage action. The appeal focuses specifically on the division of marital property, custody, child support and maintenance. Two children were born of the marriage, one fully emancipated, the other, Anthony, was born on July 12, 1974. Anthony lives on campus as a student at the University of Missouri. He turned twenty-one just before oral argument. The parties will be referred to as Husband and Wife. Wife has appealed and Husband has cross-appealed.

Wife received a bachelor of science degree in education in 1970. She also attended a community college program for court reporting for 2½ years but did not finish. During the 25–year marriage Wife was primarily a homemaker. She worked for 2½ years at Husband's real estate business decorating newly constructed homes and providing secretarial services to his business. She also worked several months in an exercise shop. During the last 18 years of the 25 year marriage, Wife was in and out of several hospitals seeking treatment for depression and alcoholism. She is taking several medications, including Prozac and Tegretol, and has had trouble seeking and maintaining employment. Wife currently resides in Columbia where she moved when the parties separated.

Husband owns a real estate business that employs several independent contractors. In addition, he owns an interest in ten other businesses. The trial court concluded that the combined negative equity of these interests is $279,344.

The trial court awarded the property as follows:

Husband:

| | |
|---|---|
| Household Goods | $ 5,700 |
| Insurance Policies | $ 8,012 |
| Car | $13,500 |
| Bank Account | $ 3,500 |
| TOTAL | $30,712 |

Husband was also awarded all the interest in his business ventures and its debt, some real estate in Pettis County, and additional marital debt of $47,365.

Wife:

| | |
|---|---|
| Household Goods | $18,430 |
| Life Insurance | $ 2,500 |
| Car | $ 9,800 |
| Bank Accounts | $ 40 |
| | $ 75 |
| | $ 200 |
| TOTAL | $31,045 |

In addition, Wife was awarded $2,000 per month permanent maintenance, the trial court specifically finding that Husband's income reflected by his Property and Income Statement was not a true measure of either his income or his ability to earn. Husband also agreed to hold Wife harmless for all business ventures awarded to Husband.

Wife appealed, claiming that the division of marital property was an abuse of the trial court's discretion. Husband's cross-appeal raises issues on the custody award and maintenance. The reviewing court in a dissolution case must sustain the decree unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

Wife cites several factors that she contends were not considered in the division of property: the conduct of the parties, economic circumstances, the individual contributions to the acquisition of marital assets, and the distribution of all the income-producing property to Husband. The trial court has a great amount of flexibility in dividing marital property. *Stottlemyre v. Stottlemyre*, 877 S.W.2d 176 (Mo.App.1994). There is no rigid formula setting forth the weight to be given each relevant factor contained in § *452.330.1, RSMo 1994*. *Id.* Furthermore, it is presumed that the trial court considered all of the evidence in dividing the marital property. *Id.* There was evidence in the record concerning all of the factors that Wife claims the trial court failed to consider. The court will assume the trial court considered all relevant evidence in making its division of property. The court discerns no abuse in this portion of the decree, and that portion is affirmed.

Husband, in his cross-appeal, claims that the award of custody of the son is vague and unenforceable in that it does not specify joint legal or joint physical custody, and that the trial court did not include a specific written plan setting forth the terms of physical custody and visitation. The relevant portion of the decree specifically states, "Custody of the minor son is awarded jointly with son's birthdate being July 2, 1974, son to determine place of residence as to parties.... Said minor son to determine visitation with parties."

According to § *452.340.3, RSMo 1994*, child support payments must continue until the child dies or: 1) marries; 2) enters active military duty; 3) becomes self-supporting; or 4) reaches the age of 18. However, if the child enrolls in a vocational or higher education institution no later than the first day of October following graduation from a secondary school, the parent's child support obligation continues until the child completes his education or reaches the age of 22, whichever occurs first. § *452.340.5, RSMo 1994*. While it would seem that a detailed custody order in this situation would be somewhat futile since the twenty-one year old is currently living at the University and will probably never return to live at home, Missouri case law requires a finding of custody. In *Rich v. Rich*, 871 S.W.2d 618 (Mo. App.1994), a similar situation was presented. In that case, the trial court refused to enter any custody award at all because the child was over the age of 18 and attending college. Child support payments, however, were ordered since the child was still in school. The trial court in *Rich* essentially found that the eighteen-year-old child was emancipated for purposes of the child custody, but not for purposes of support. The Appeals court found these findings inconsistent and contradictory. *Id.* at 625. It is mandatory for a trial court in a dissolution case to provide for the custody of a minor dependent child. *Id.* at 624–25. The rationale of *Rich* is *not* diluted by the fact the child there turned twenty-two during the appeal, making the appeal moot. *Id.* at 625.

The issue presented in the case at bar is whether or not the custody order that was entered by the trial court is sufficient. Generally, custody must be given to one parent or the other, absent unfitness of both. *Cradic v. Cradic*, 544 S.W.2d 605, 607 (Mo. App.1976). The trial court must state whether the award of custody is joint legal or joint physical, and if it is joint legal, one parent

must be given the award of custody. It is recognized that because the child is in college, this situation does not fit squarely into the policies for custody awards. However, custody must rest with someone as the son is still a dependent and is still not emancipated. There is no contention in this appeal that the son is emancipated. *Zalmanoff v. Zalmanoff,* 862 S.W.2d 941, 944–46 (Mo.App.1993); *Sutton v. Schwartz,* 860 S.W.2d 833, 835 (Mo. App.1993). There is no model custody plan that fits in all situations. *O.J.G. v. G.W.G.,* 770 S.W.2d 372, 376 (Mo.App.1989). In setting forth the custody plan, a case by case approach should be utilized "to determine the best interest of the child and to tailor the plan to meet that interest." *Id.* The court feels it is superfluous to require decrees in factual situations such as this where the person for whom support is being ordered is now twenty-one, attending college, and really not in need of living arrangements with a parent; however, barring some pronouncement by the legislature, the court refuses to allow merely a decree of joint custody, without a denomination of physical custody. The factual situation here points to the dilemma a trial court is put to: § *452.340.3(4)* requires support until the child reaches eighteen, while .5 of the statute extends the time for support to continue until the child reaches twenty-two.

Under the present state of the law, a physical custody award is further justified since it may be necessary to determine which parent would be responsible for expenses not covered by the payments of the non-custodial parent. *In re Marriage of Julian,* 868 S.W.2d 182, 186 (Mo.App.1994). On remand, the court should make such a finding.

Husband's next point addresses the lack of specificity in the child support award in that there is no payor spouse designated, there was no evidence regarding the cost of the tuition to be paid, and there was no finding by the trial court that the Form 14 amount of child support was unjust and unreasonable, thereby allowing deviation from the presumed amount. The decree simply states, "Minor son to be provided with reasonable tuition, room and board to attend the University of Missouri at Columbia, or an institution of higher learning comparable to the same as to costs."

Rule 88.01(e) provides that the trial court is to presume that the Form 14 amount of child support is correct, unless evidence provides otherwise. To rebut the amount of child support indicated on the Form 14 amount, "It is sufficient ... if the court ... enters in the case a written finding or a specific finding on the record that the amount so calculated, after consideration of all relevant factors, is unjust or inappropriate." *Rule 88.01(e)* (mandatory to find Form 14 amount unjust or inappropriate before ordering divorcing parents to pay ½ of child's college expenses). "The rule is clear in its mandate that the trial court not deviate from a Form 14 calculation unless it finds, on the record, that the Form 14 amount is unjust or inappropriate." *Hamilton v. Hamilton,* 886 S.W.2d 711, 716 (Mo.App.1994). See also *Citrin v. Citrin,* 896 S.W.2d 88, 89–90 (Mo. App.1995). The rule does not require the trial court to make findings of all the factors considered and the numbers used in the calculations. *Scoggins v. Timmerman,* 886 S.W.2d 135, 139 (Mo.App.1994). The decree here did not make a finding on the Form 14 amounts. The case must be remanded for the trial court to make the specific finding that the presumed amount of child support in Form 14 is unjust or inappropriate.

Also, under this point, Husband contends that the order is vague and unenforceable in that it does not specify who is the payor of the child support. While it may be obvious from the record as to which spouse is in a better position to pay the support, the decree must be enforceable on its face. It is obvious Husband was intended by the court to continue paying the son's college expenses. As part of the remand of this case, the trial court should clarify this part of the order to state specifically who is the payor. *In re Marriage of Braun,* 887 S.W.2d 776, 778 (Mo.App.1994).

Finally, under this point, Husband argues that the amount of the child support award is vague and unenforceable in that there was no evidence introduced as to the amount of the tuition, room and board. "As a general rule, a judgment or decree for child support must be sufficiently certain in its terms to be capable of enforcement by execution in the manner provided by law, and the decree must be in such form that the clerk may issue an execution upon which an officer is able to execute without requiring external proof and another hearing." *Hahn v. Hahn*, 785 S.W.2d 756, 758 (Mo.App.1990). Husband argues that an indefinite provision in a decree is void. That, however, is not the case. Vague orders that attempt to require payment by parties for educational expenses and child support may be remanded for correction. *Gable v. Gable*, 816 S.W.2d 287, 290 (Mo.App.1991). Here the amount of tuition at the University of Missouri—Columbia is easily ascertained. However, the room and board requires some clarification as to where the child shall live since living costs can vary dramatically from place to place. Specifically, it should be stated whether the son is to live in an apartment, a dormitory, the fraternity house, etc. The parties indicate the son is living in a named fraternity, and will continue to live there. The new decree should so specify.

Husband's final point on appeal involves the award of $2,000 per month permanent maintenance to the Wife. Husband claims that the trial court erroneously applied the law in making this award because it failed to take into account the obligations and assets awarded each party, the ability of Husband to meet his needs while meeting those of Wife, and the underlying policy of maintenance. Again, review is governed by *Murphy v. Carron*, 536 S.W.2d at 32. Further, the trial court is granted wide discretion in awarding maintenance. *Wallace v. Wallace*, 839 S.W.2d 354, 356 (Mo.App.1992).

According to § *452.335.1, RSMo 1994*, as applicable here, the court may grant maintenance to either spouse, but only if it finds that the spouse seeking maintenance: (1) lacks sufficient property, including marital property apportioned that spouse, to provide for reasonable needs; and (2) is unable to support himself or herself through appropriate employment. The relevant factors for determining the amount and duration of the maintenance award are set out in § *452.335.2*.[1] These factors are only to be considered after the court finds that the threshold test in § *452.335.1, RSMo 1994* has been satisfied. *Whitworth v. Whitworth*, 878 S.W.2d 479 (Mo.App.1994).

In the case at bar, it is evident that the Wife was not awarded enough property to meet her reasonable needs. The only property awarded to the Wife consisted of household goods, a car, a life insurance policy worth $2,500, and three bank accounts totaling $315. "In terms of an award of property replacing an award of maintenance, however, the focus of our statute seems more specifically on income producing property, see *Nixon v. Nixon*, 525 S.W.2d 835, 838 (Mo.App. 1975)." *Brueggemann v. Brueggemann*, 551 S.W.2d 853, 857 (Mo.App.1977). Wife was not awarded any of the income producing, or potentially income-producing, property. Even if the property received by Wife would

---

1. (1) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(2) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(3) The comparative earning capacity of each spouse;

(4) The standard of living established during the marriage;

(5) The obligations and assets, including the marital property apportioned to him and the separate property of each party;

(6) The duration of the marriage;

(7) The age, and the physical and emotional condition of the spouse seeking maintenance;

(8) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance;

(9) The conduct of the parties during the marriage; and

(10) Any other relevant factors.

provide for Wife's reasonable needs for any length of time besides the immediate future, which it will not, it "is well-settled in Missouri that the spouse seeking maintenance is not required to deplete his or her assets or consume the marital property before being entitled to maintenance." *Wallace,* 839 S.W.2d at 357.

■ Since the Wife does not have sufficient property to meet her needs, an examination of the second prong of the § *452.335.1* test, the Wife's ability to meet her needs through appropriate employment, must be made. While Wife has a bachelor's degree in education and has attended 2½ years of a court reporting program at a community college, Wife has not had significant work experience. Wife was a homemaker for a majority of the 25 year marriage and is not presently employed. While parties are encouraged to become self sufficient through employment, the court may consider the effect of any physical conditions of the spouse asking for maintenance on his or her capacity to earn a living in deciding whether or not to award maintenance. *McCallister v. McCallister,* 809 S.W.2d 423, 429 (Mo.App.1991). The record indicates that Wife's ability to work is limited by her medical and psychological conditions and that Wife is not capable of finding employment at this time or for the foreseeable future.

■ After determining that maintenance is appropriate, the trial court must then consider the ten factors set forth in § *452.335.2* to determine the amount and duration of maintenance. These factors are neither all inclusive nor mandatory, so that the trial court is not required to specifically address each factor. *McCallister,* 809 S.W.2d at 429. "Indeed, a maintenance award is not deficient if the trial court failed to announce that it was made in accordance with statutory factors." *Id.* at 429. The following § *452.335.2* factors are relevant to this case: (1) the financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability *to meet his needs* independently; (6) the duration of the marriage; (7) the age, and the physical and emotional condition of the spouse seeking maintenance; (8) the ability

of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance; and (9) the conduct of the parties during the marriage.

■ It has already been determined that Wife lacks the ability to meet her needs at this time due to her health problems, which include depression and alcoholism. Since Wife was not awarded any of the income-producing property, she also lacks the financial resources to meet her needs. Husband, on the other hand, acquired all of the income-producing property. Although many of those ventures had a negative equity, the trial court specifically found that Husband's income reflected by his Property and Income Statements was not a true measure of either his income or his ability to earn. Husband listed his income at $3,203 monthly, with expenses of $3,175. He asserts he does not have the ability to pay $2,000 in maintenance. As triers of fact, the court could decide the weight and value of Husband's evidence. *Zalmanoff v. Zalmanoff,* 862 S.W.2d at 944. Viewed in light most favorable to the decree, the evidence here allowed the court to impute income to the Husband. *Bradley v. Bradley,* 880 S.W.2d 376, 379 (Mo.App.1994). Husband, as a broker, totally ran a real estate business which appeared quite successful, he had many benefits, and the business had large sales volume and sizable listings. *Faintich v. Faintich,* 861 S.W.2d 217, 219–20 (Mo.App.1993).

The length of the marriage and the conduct of the parties are additional factors to be taken into consideration. The marriage lasted for 25 years. Wife was employed outside of the home less that 3 years of that time and 2½ years of that time she worked at Husband's real estate business. A final factor to be considered is the conduct of the parties during the marriage. *Francis v. Francis,* 823 S.W.2d 36, 39 (Mo.App.1991). During the course of marriage, especially toward the end, there were several acts of misconduct on the part of both the Husband and Wife; but the evidence of Husband's misconduct was more substantial than that of the Wife. As a whole, considering the evidence as to all the statutory factors, and

under the scope of review, the trial court did not misapply the law in making the award of $2,000 per month permanent maintenance to the Wife.

The judgment is affirmed as to the division of property and the award of maintenance. That portion relating to custody and support is reversed and remanded for modification in the form of findings and conclusions, consistent with this opinion. *In re Marriage of Braun*, 887 S.W.2d 776 (Mo.App.1994). Costs to be assessed evenly between the parties.

All concur.