Catherine D. CARLSON, Respondent,

v.

Timothy R. CARLSON, Appellant.

No. WD 68783.

Missouri Court of Appeals, Western District.

Dec. 23, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 27, 2009.

Application for Transfer Denied Feb. 24, 2009.

Dennis J. Owens, Jonathan Sternberg, Kansas City, MO, for appellant.

Ann Kern, Springfield, MO, for respondent.

Before THOMAS H. NEWTON, C.J., and VICTOR C. HOWARD and ALOK AHUJA, JJ.

ALOK AHUJA, Judge.

Appellant Timothy Carlson ("Father") appeals from a decree dissolving his marriage to Respondent Catherine Carlson ("Mother"), as well as the circuit court's award of sanctions to Mother. For the reasons set forth below, we affirm in substantial part, but reverse and remand to permit the trial court to modify its judgment in certain limited respects.

## I. Factual Background

The parties were married on or about July 26, 1998. Father and Mother had two children together: Hayden, born February 20, 1999, and Hannah, born October 15, 2001.

On December 15, 2005, Mother filed a Petition for Dissolution of Marriage in the Circuit Court of Miller County. Father filed a Counter–Petition on December 28. Among other things, Father's Counter–Petition alleged that Mother "is an alcoholic and has emotionally abused [Father] and the minor children," "abandons said children for long periods of time so she can spend time carousing [and] consuming alcohol," and "has physically abused the minor children" by failing to attend to their medical needs in a timely fashion. The Counter–Petition also alleged that Father "provides all of the care, feeding and support" for the children.

On January 3, 2006, the circuit court entered a memorandum of temporary custody, granting the parties joint legal and physical custody and Mother exclusive possession of the marital home, and stating that the parties had stipulated to the ap-

pointment of a guardian *ad litem* for the children. An Order Appointing Guardian *Ad Litem* was entered the same day. On August 10, 2006, Mother filed a First Amended Petition for Dissolution of Marriage. Father answered the Amended Petition on August 18.

On January 23, 2006, Mother served Father's counsel with a Motion for Sanctions, which argued that the allegations in Father's Counter–Petition described above were "blatantly false, and in some instances, slanderous," were made without good-faith basis, and "will serve only to delay the finalization of this case and increase the cost of litigation." Mother's Motion for Sanctions was subsequently filed with the trial court on July 6, 2006, and was originally noticed to be heard on July 13. Hearing on the Motion for Sanctions was continued or reset at least four times; Mother formally re-noticed the Motion for hearing on at least one of those occasions. Ultimately, the parties agreed on December 14, 2006, that Mother's Motion for Sanctions, as well as other pending matters requiring evidence, would be passed and taken up with the case during trial.

Although we need not detail these events given the issues raised on appeal, even Father's briefing acknowledges that his behavior during the pendency of the dissolution was frequently inappropriate, threatening, and emotionally abusive. Much of this behavior occurred in front of the children. In one incident (as described in *Father's* brief) he "became enraged and began to scream profanities" at the guardian *ad litem* over the telephone, in the children's presence. As a result, the guardian *ad litem* obtained an order of protection against Father in October 2006, which prevented him from having contact with the children; that order remained in place for more than two months.

The case was tried before the circuit court beginning on February 1, 2007. The trial court entered its Judgment and Decree of Dissolution of Marriage on June 1, 2007. Mother was awarded sole legal custody, with the parties sharing joint physical custody. Father was ordered to pay child support, including one-half of certain costs for the children's college education. The circuit court's Judgment required Father to pay all of the guardian *ad litem's* fees and imposed an attorney's lien for the collection of such fees upon Father's option to purchase a 20% share in Carlson Inspection Associates, L.L.C. (a company owned by his father, and for which Father currently works). The circuit court also imposed sanctions against Father, ordering him to pay $15,000 of Mother's attorney's fees. This appeal follows.

## II. Analysis

### A. Standard of Review

In this dissolution action we "'review the judgment of the trial court under the standard of review applicable to any other court-tried case.'" *Reynolds v. Reynolds,* 109 S.W.3d 258, 267 (Mo.App. W.D.2003) (citation omitted). Thus, we must affirm unless the judgment is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

### B. Award of Mother's Attorney's Fees as Sanctions

In his first Point, Father argues that the trial court erred in ordering him to pay $15,000 of Mother's $18,000 in attorney's fees as sanctions.

In a four-page discussion in its Judgment, the trial court found that the allegations in Father's Counter–Petition described above were "blatantly false," "unsubstantiated" and "mean spirited,"

"aimed at vexing and harassing [Mother]," and that "[Father]'s false allegations were not made upon any good faith basis, but rather were a blatant attempt by [Father] to falsely demean, impugn and assassinate [Mother]'s character." The trial court concluded that "[t]he false allegations appear to be part of a considered strategy by [Father] to destroy [Mother]'s life." For these reasons, the trial court found

> that sanctions against [Father], via both its inherent powers and by virtue of Supreme Court Rule 55.03(b)(1) and (3) are appropriate. Such sanctions include an award of attorney fees. [Mother] incurred $18,000.00 of attorney fees through the trial. While there are costs with any litigation, the Court finds the majority of fees and expenses incurred by [Mother] were related to defending against the false allegations made by [Father], and responding to [Father]'s egregious behavior and conduct during these proceedings. The Court, on the basis of its inherent powers and Supreme Court Rule 55.03(b)(1) and (3), should award [Mother] judgment in the amount of $15,000 against [Father] for her attorney fees herein expended.

Where "a party's claims are initiated frivolously or brought in bad faith," Rule 55.03 [1] authorizes the trial court "to impose sanctions as a deterrent to similar conduct in the future and to recompense the other party." *Robin Farms, Inc. v. Beeler*, 991 S.W.2d 182, 186 (Mo.App. W.D.1999).[2] The purpose of awarding attorney's fees and costs as sanctions is "to compensate the opposing party for the cost of defend-

ing against the baseless motion or pleading." *Noland v. State Farm Mut. Auto. Ins. Co.*, 853 S.W.2d 327, 330 (Mo.App. W.D.1993).

The trial court's imposition of sanctions pursuant to Rule 55.03 will be affirmed "unless the court abused its discretion in doing so." *Robin Farms*, 991 S.W.2d at 186. "An abuse of discretion occurs when the court's order is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Long v. Cross Reporting Serv., Inc.*, 103 S.W.3d 249, 254 (Mo.App. W.D.2003) (quoting *Brown v. Kirkham*, 23 S.W.3d 880, 882–83 (Mo.App. W.D.2000)).

■ Father's only complaint as to the sanctions award is the claim that he did not have sufficient notice that the trial *was* the hearing on Mother's Motion for Sanctions, and/or that he did not have an opportunity to defend himself against the Motion. The record belies that claim.

More specifically, Mother served her Motion for Sanctions Pursuant to Rule 55.03 on Father on January 23, 2006. As required by the Rule, the Motion was not *filed* until July 6, more than 30 days after it was served. The Motion was at least twice specifically noticed for hearing. And after being reset or continued on multiple occasions, the parties eventually agreed on December 14, 2006, that "Ms. Carlson's Motion for Sanctions ... [would be] passed and taken with the case at trial," a fact Father's briefing specifically acknowl-

---

**1.** All references to Rules are to the Missouri Rules of Civil Procedure (2008).

**2.** Because we find that the trial court properly imposed sanctions under Rule 55.03, we need not address the scope of the court's inherent powers. "[T]he trial court's judgment will be affirmed if it is correct on any

ground supported by the record, regardless of whether the trial court relied on that ground." *Charron v. State*, 257 S.W.3d 147, 151 (Mo.App. W.D.2008) (quoting *Mo. Soybean Ass'n v. Mo. Clean Water Comm'n*, 102 S.W.3d 10, 22 (Mo. banc 2003)).

edges. Trial was held beginning February 1, 2007, almost a year after Father was served with Mother's Motion for Sanctions, and over two months after the parties' specific agreement that it would be passed and taken up *during trial*.

■ Evidence at trial established the lack of a factual basis for the challenged allegations of Father's Counter–Petition (a conclusion he does not dispute here). Two on-the-record exchanges occurred which related specifically to Mother's Motion for Sanctions, and the fees she sought thereunder. During the first, on the fourth day of trial, Mother's counsel asked Mother the amount of her attorney's fees, and had her confirm that she was asking the court to award them as sanctions. Father's counsel raised no objection. During the second, on the final day of trial, Father's counsel objected to questions asking Mother to update the total amount of her fees, on the basis that "they did not ask for the attorneys' fees in either their original petition or their amended petition and, therefore, it's irrelevant." The objection was overruled. At the conclusion of this exchange the court observed that the parties' proposed findings could address whether Mother's fees were attributable to "the grounds ... set forth in [her] motion for sanctions."

Although the Motion for Sanctions was clearly at issue at trial (per the parties' agreement), at no point did Father: introduce any evidence, testimony, or arguments regarding the issue; cross-examine Mother as to the amount or nature of the attorney's fees she sought; or make any indication (much less an offer of proof) as to what evidence or arguments he would have offered on the sanctions issue if given greater notice. Notably, the only objection Father interposed at trial (but only on the *second* occasion when the issue arose) did not assert lack of notice, but instead only argued that the issue had not been properly asserted in Mother's original or amended Petitions (an argument he does not renew here).

While Father claims that he was not aware the court was actually going to rule upon Mother's Motion for Sanctions at the conclusion of trial, his Proposed Findings of Fact and Conclusions of Law asked the trial court to conclude:

> That the inability of [Father] to prove any of the allegations in his Counter–Petition does not rise to the level required for sanctions under Supreme Court Rule 55.03 other than that identified in Paragraph 100 above [ (which proposed striking and dismissing the Counter–Petition due to the failure of proof) ] and therefore [Mother]'s Motion for Sanctions is denied.

Finally, Father's Motion for New Trial did not claim lack of notice or a denial of due process—his arguments here. Instead, his post-trial motion merely argued that the award of attorney's fees of $15,000

> [wa]s against the weight of the evidence as [Mother] presented little to no evidence of any fees or costs incurred as a result of [Father]'s actions that were not incurred in the ordinary course of this dissolution proceeding had the actions of [Father] not violated said Rule.

Notably, Father does not raise this issue on appeal. As at trial, Father's new-trial motion did not identify any evidence he was prevented from presenting due to the manner in which the sanctions issue arose (nor does he allude to any such evidence here).

■ At its base, Father's claim that he was not afforded an opportunity to defend himself against Mother's Motion for Sanctions boils down to the assertion that "[a]t no point during the trial did the court say anything such as 'now the Court will take

up Ms. Carlson's Motion for Sanctions' or proceed in any similar manner." Such a level of formality was not required. In light of the circumstances here, we do not find credible Father's argument that he was not afforded notice and a reasonable opportunity to respond to Mother's Motion for Sanctions, and the trial court's sanctions award is accordingly affirmed.[3]

Point I is denied.

## C. Assessment of Guardian *Ad Litem's* Fees against Father

■ In its Judgment, the trial court determined that it was appropriate to assess the entire amount of the guardian *ad litem's* fees against Father:

Additionally, the Court finds that [Father] requested the appointment of the Guardian ad Litem herein and the appointment was made by the Court to investigate the allegations alleged in his pleadings. The evidence is overwhelming that the Guardian ad Litem spent the majority of her time dealing with issues created by [Father]'s conduct and chasing allegations he insisted be investigated. The Guardian ad Litem found no support for any of [Father]'s allegations as noted herein.

In his second Point, Father characterizes the trial court's award of the guardian *ad litem's* fees as a further sanction, and argues (as in Point I) that he did not have sufficient notice that such a sanction was being considered. However, as Mother points out, § 452.423.5 [4] "provides that the court may, in its discretion, award Guardian Ad Litem fees as a judgment," independent of any sanctions power. *Alberswerth v. Alberswerth,* 184 S.W.3d 81, 95 (Mo.App. W.D.2006). More specifically, § 452.423.5 states:

The guardian ad litem shall be awarded a reasonable fee for such services to be set by the court. The court, in its discretion, may:

(1) Issue a direct payment order to the parties. If a party fails to comply with the court's direct payment order, the court may find such party to be in contempt of court; or

(2) Award such fees as a judgment to be paid by any party to the proceedings or from public funds. Such an award of guardian fees shall constitute a final judgment in favor of the guardian ad litem. Such final judgment shall be enforceable against the parties in accordance with chapter 513, RSMo.

Father does not respond to Mother's citation of § 452.423.5 as a basis for the trial court's order.

As indicated above, "the trial court's judgment will be affirmed if it is correct on any ground supported by the record, regardless of whether the trial court relied

---

**3.** Given our disposition, we need not decide whether a hearing is in all instances required before the imposition of sanctions under Rule 55.03; to the extent a hearing was required, the trial *was* that hearing, and Father had more than adequate notice and opportunity to present evidence at that time.

Father's opening brief claims that the trial court's sanctions award "far exceeded the four short points in [Mother]'s motion for sanctions." Father did not make this argument below, and does not develop that point on appeal by identifying how the court's award went beyond Mother's Motion, or by defending any conduct beyond Mother's Motion on which the sanctions award was purportedly based. (We note in this regard that the Judgment explains at length the reasons for the trial court's finding that the allegations of Father's Counter–Petition were unfounded.) To the extent Father intended to assert this argument as an independent point, we deem it abandoned.

**4.** All statutory references are to the Revised Statutes of Missouri 2000 and Cumulative Supplement 2007.

on that ground." *Charron*, 257 S.W.3d at 151 (quoting *Mo. Soybean Ass'n*, 102 S.W.3d at 22). Whether or not the trial court could order Father to pay the guardian *ad litem's* fees as sanctions, § 452.423.5 on its face gives the trial court the power, in its discretion, to order Father to pay the entirety of those fees.

■ "A trial court's award of Guardian Ad Litem fees will not be disturbed unless it was an abuse of discretion." *Alberswerth*, 184 S.W.3d at 95. Father does not challenge the findings on which the trial court based its award of guardian *ad litem* fees, or the amount of fees awarded. In light of the trial court's unchallenged findings that the guardian *ad litem* was appointed at Father's request, that she spent the majority of her time investigating Father's allegations (at his insistence), and that she found no support for those allegations, we cannot say that the trial court erred in ordering Father to pay her fees. As in *Alberswerth*,

> Evidence supports the court's award requiring that [Father] pay the full Guardian Ad Litem fees. The Guardian Ad Litem was appointed in response to [Father]'s allegations of abuse and neglect, which were not found to be true. Section 452.423.5 leaves the allocation of Guardian Ad Litem fees to the trial court's discretion.

*Alberswerth*, 184 S.W.3d at 97.

Point II is denied.

## D. Attorney's Lien Against Father's Personal Property

■ In Point III, Father argues that the trial court erred in placing an attorney's lien on his option to purchase an interest in his employer's company to secure his payment of guardian *ad litem* fees. We agree, and remand with instructions to modify the judgment to eliminate references to the attorney's lien.

At the outset, we note that Mother elected not to brief this issue, and the guardian *ad litem* did not appear on appeal to defend this aspect of the trial court's Judgment. We therefore have only the benefit of Father's briefing.

As indicated above, the trial court determined that Father was to pay the entirety of the guardian *ad litem* fees expended in the case. To secure that payment, the Judgment specified that Father's "executory interest in the right to repurchase an ownership interest in Carlson Inspection Associates, LLC. ['Carlson Inspection'] should be impressed with an attorney's lien in favor of the Guardian ad Litem."

The trial court cited no authority, statutory or otherwise, to support its recognition of an "attorney's lien" in these circumstances. The only two Missouri statutes under which attorney's liens may be created to which we have been cited by Father, and of which we are aware, are §§ 484.130 and 484.140. But neither statute appears to be applicable here. Section 484.140 only applies where an attorney has "contract[ed] with his client for legal services rendered or to be rendered him for a certain portion or percentage of the proceeds of any settlement of his client's claim or cause of action." We are aware of no such agreement between Father and the guardian *ad litem* here.

Section 484.130 provides that, "[f]rom the commencement of an action or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action or counterclaim, which attaches to a verdict, report, decision or judgment in his client's favor, and the proceeds thereof in whosesoever hands they may come." "Section 484.130 is expressly for the purpose of protecting counsel who undertake filing a lawsuit or a counterclaim on behalf

of his or her client in the event the attorney is successful in recovering assets as a result of the action or counterclaim." *Evans v. Fed. Deposit Ins. Corp.*, 981 F.2d 978, 980 (8th Cir.1992) (Missouri law). Accordingly, " 'before such a lien attaches,' " § 484.130 has been read to require that " 'the attorney must commence an action or serve an answer containing a counterclaim.' " *Id.* (quoting *Strubinger v. Mid-Union Indem. Co.*, 352 S.W.2d 397, 412 (Mo.App.1961)); *see also* Glenn E. Bradford and Tammy N. Etem, *Attorney's Liens under Missouri Law*, 56 J. Mo. B. 217, 218 (July–August 2000). Whether the guardian *ad litem* could be construed to have "appeared for" Father in these proceedings, or to have Father as his "client," the guardian *ad litem* did not file or prosecute any claim or counterclaim on Father's behalf that resulted in Father's recovery of the option right as his property. We accordingly conclude that § 484.130 cannot support the trial court's action.

While we recognize that an attorney's lien may be an available remedy in appropriate circumstances in a dissolution proceeding, *see State ex rel. Kinder v. Dandurand*, 261 S.W.3d 667, 670 (Mo.App. W.D. 2008), and while we eschew any broad holding given the one-sided presentation of the issue, we conclude that the trial court's imposition of an attorney's lien on Father's interest in Carlson Inspection Associates, L.L.C. was unauthorized, and must be vacated.

**E. Award of Children's Postsecondary Educational Expenses**

■ In Point IV, Father contends that the trial court's order for him to pay one-half of the childrens' postsecondary educational expenses is too indefinite and uncertain to be enforceable. We agree, and remand for modification of that portion of the Judgment in the limited respects identified below.

The trial court's Judgment provides:

Section 11. In addition to any continuing child support obligations, Father shall pay one-half (1/2) of the cost of tuition, books, room and board, for the children to attend an institution or program of higher learning for the maximum statutory period following graduation from high school. Costs shall be capped at a maximum rate equal to such expenses at the University of Missouri at Columbia.

" 'As a general rule, a judgment or decree for child support must be sufficiently certain in its terms to be capable of enforcement by execution in the manner provided by law, and the decree must be in such form that the clerk may issue an execution upon which an officer is able to execute without requiring external proof and another hearing.' " *Monsees v. Monsees*, 908 S.W.2d 812, 817 (Mo.App. W.D. 1995) (quoting *Hahn v. Hahn*, 785 S.W.2d 756, 758 (Mo.App. E.D.1990)). "The requirement of definiteness and certainty for support orders, however, has been relaxed." *Fulton v. Adams*, 924 S.W.2d 548, 551 (Mo.App. W.D.1996). Consequently, "[a] child support order which lacks 'pristine specificity' is enforceable if it can be made certain in a hearing to determine the exact amount due by ministerial computation." *Id.* Where necessary, "[v]ague orders that attempt to require payment by parties for educational expenses and child support may be remanded for correction." *Monsees*, 908 S.W.2d at 817.

Following an extensive analysis of the existing caselaw regarding postsecondary education support awards, the Eastern District of this court suggested the following model format for such awards:

Husband shall pay one-half of the cost each year for each child attending a

post-secondary college, university, or vocational/technical school, state or private, subject to the following limitations:

1) 'Cost' shall include tuition, fees, books, dormitory costs for room and board. It does not include room and board while residing with either parent.

2) The 'one-half' husband is to pay shall be the actual cost to the child, *i.e.* if child receives a scholarship or other aid which reduces cost, the 'cost' does not include the amount of such scholarship or aid. For this purpose, loans to the student shall not be considered a 'scholarship or other aid.'

3) The child must carry at least a minimum number of credit hours each semester which, according to the institution the child attends, constitutes a full load.[5]

4) The maximum cost which husband shall be responsible for in any given school year will be one-half of the then cost for tuition, fees, books, and dormitory costs for room and board at the University of Missouri at Columbia, regardless of what institution the child attends.

5) The husband shall not be responsible for paying for more than eight semesters at a college or university.

*Echele v. Echele,* 782 S.W.2d 430, 437 (Mo. App. E.D.1989).

While we have acknowledged the usefulness of the *Echele* framework, we have held that a trial court need not *precisely* follow it in order for a higher education support award to be enforceable. *Panettiere v. Panettiere,* 945 S.W.2d 533, 539 (Mo. App. W.D.1997) ("Although the descriptive criteria set forth in *Echele* is a desirable format, it is not necessary in all cases.").

Here, as in both *Panettiere* and *Monsees,* and subject to the caveat below regarding financial aid, the trial court's order is sufficiently specific as to the tuition amount, because "the amount of tuition at the University of Missouri–Columbia is easily ascertained." *Monsees,* 908 S.W.2d at 817; *see also Panettiere,* 945 S.W.2d at 538 (order was "sufficiently definite and certain because the cost of tuition at Northwest Missouri State is subject to ministerial computation").[6]

The trial court's order regarding non-tuition expenses is, however, deficient in at least two respects. First, as in *Monsees,* "the room and board requires some clarification as to where the child[ren] shall live since living costs can vary dramatically from place to place." 908 S.W.2d at 817. The decree should specify "whether the [children are] to live in an apartment, a dormitory, the fraternity [or sorority] house, etc.," or at least tie the amount of "room and board" expenses for which Father is 50% responsible to the cost of a specific type of accommodation, so that the cost of room and board will be readily ascertainable. *Id.* If the trial court intended to restrict the costs of room and board to those of the University of Missouri–Columbia's dormitory rates as Mother contends, the decree should so specify.[7]

---

5. In this connection, *see* the current version of § 452.340.5 (specifying that "the parental support obligation shall continue" beyond age eighteen if, *inter alia,* "the child enrolls for and completes at least twelve hours of credit each semester").

6. Despite Father's objections, we presume that the trial court intended to use *in-state* tuition at the University of Missouri–Columbia as its benchmark, given that Mother is and has for some time remained a Missouri resident.

7. Father objects that the Judgment does not specify whether his cost-sharing responsibility applies to living expenses if the children choose to live at home with Mother while obtaining post-secondary education. Once again, we believe this concern is academic— the natural reading of the Judgment's refer-

Second, the judgment contains no language to indicate that Father's payment of tuition is to be one-half of the children's net out-of-pocket cost. In this respect, the award is more vague than the one considered in *Panettiere*, where the court was able to read an award of tuition "after application of all available financial aid" to mean that the husband's obligation to pay tuition expense was to be "reduced by any scholarships, grants, stipends or other cost reducing monies actually received." *Panettiere*, 945 S.W.2d at 540. Here, unlike in *Panettiere*, the Judgment contains no qualifying language whatsoever. The trial court should modify its decree to specify that Father's obligation to pay tuition is limited to the children's tuition costs net of financial aid; we encourage the trial court to consider the language used in *Panettiere* in this connection.[8]

### III. Conclusion

The trial court's imposition of sanctions against Father, and its order requiring him to pay the entirety of the guardian *ad litem's* fees, are affirmed. The attorney's lien imposed against Father's personal property is vacated. The portion of the Judgment relating to the children's post-secondary educational expenses is vacated, and the cause remanded for modification of the Judgment consistent with this opinion. Because we remand only for limited modifications of the Judgment, our mandate should not be read to require that the

trial court conduct further proceedings on remand.

All concur.

---

ence to "the cost ... of room and board" is that it refers to *out-of-pocket* expenses, particularly since Mother's costs for providing living accommodations to the children are already comprehended within the court's existing child-support award.

**8.** Father also argues that the decree's reference to the "costs" of a college education should be more specifically defined. *See Hahn*, 785 S.W.2d at 758 ("Here it cannot reasonably be determined from the trial

court's order what 'costs' husband is obligated to pay. It is plausible that the costs of higher education include tuition, books, room and board, travel, social activities, school supplies, as well as other items."). In this case, however, the decree plainly limits "costs" to "the cost of tuition, books, [and] room and board." With the modifications specified in the text, the decree is sufficiently definite without further delineation of covered "costs."